THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WADE ROBINSON, Defendant-Appellant.

First District (3rd Division)   No. 78-30

Opinion filed March 28, 1979.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Pamela Louise Gray, and Diane Michel Powell, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Wade Robinson, was charged with the murder of Houston Walls, Jr. A jury in the Circuit Court of Cook County found the defendant guilty of voluntary manslaughter. The trial court entered judgment on the conviction and sentenced the defendant to a term of 4-12 years in the Department of Corrections. On appeal he asserts that he was denied a fair trial due to ineffective assistance of counsel, an erroneous jury instruction and highly prejudicial cross-examination of his wife.

On September 10, 1976, the defendant lived with his wife and children in an apartment at 1645 North Halsted in Chicago. The deceased, Houston Walls, was the caretaker of the building. Shortly after 11 a.m., on that day, the defendant was resting in his bedroom when he heard Walls come to his apartment. After Walls left, the defendant's wife advised him that Walls demanded $50 or he would turn off the lights in the apartment. Shortly thereafter, the defendant went into the basement to find Walls to discuss the matter. When he was unable to locate him, the defendant returned to his apartment.

Upon his return, the defendant was watching television with his wife and children when the electricity went off. The defendant took a loaded gun and went into the basement with his wife where he found Walls, with a screwdriver in his right hand, tampering with the fuse box. He told Walls that he did not owe him any money and asked Walls to turn on the lights. Walls refused, demanded $50 from the defendant and called the defendant derogatory names. Walls grabbed the defendant's shirt and tore it, poked the defendant in the chest and "busted" his lip.

The defendant testified that his wife, Annie, told Walls to stop calling the defendant names. He stated that Walls turned around and faced

Annie, shoved her and grabbed her by the neck. The defendant testified that he thought Walls was going to kill his wife, so he shot him from a distance of four to five feet. He also asserted that Walls' reputation in the community was that of a violent, quarrelsome man who carried a gun.

Annie Pearl Robinson, the defendant's wife, described the events preceding the shooting of Walls and her testimony coincided with that of the defendant. She stated that Walls grabbed her around the neck and was pushing her when the defendant shot him.

Jerry Selvy, a resident of the apartment building, was an eyewitness to the shooting. When the lights went out in his apartment, he went into the basement to turn them on and witnessed Walls, the defendant and Annie arguing. He testified that Annie grabbed Walls' arm and he pushed her away. Annie, who was standing in front of the doorway, pushed Walls. Walls then pushed Annie out of his way so he could leave the basement. At this time the defendant removed a gun from his back pocket, placed it in back of Walls' head and shot him.

Officer Michael Fitzgerald of the Chicago Police Department, was the officer who took the defendant into custody. He testified that the defendant admitted shooting Walls. The defendant told the officer that he and Annie pleaded with Walls to turn on the electricity. Walls became belligerent and slapped and pushed Annie. When the defendant went to Annie's aid, Walls turned around with a screwdriver. At this time the defendant pulled his gun and shot Walls.

Investigator Lee Epplen of the Chicago Police Department, testified that he interviewed the defendant at police headquarters the afternoon of the shooting. The defendant told the officer that when he and his wife went into the basement, after the lights in his apartment went out, Walls was pulling wiring from the electrical box. The defendant asked Walls to stop pulling the wiring and turn the lights back on in his apartment. Walls became abusive, called him names and grabbed the defendant, tearing his shirt. Shortly thereafter, Walls' attention focused on Annie. The defendant noticed that Walls clenched his left hand and that he appeared to have something in his right hand. The defendant told the officer that he didn't know if Walls was going to hit his wife or not. The defendant reached into his back pocket, pulled out the gun, placed it near the back of Walls' head, and fired one shot.

On appeal the defendant argues that he was denied a fair trial because of ineffective representation of counsel, as evidenced by the crude and offensive nature of his trial attorney's closing argument. He labels the overall tone of the closing argument as abusive, states that the attorney used unwarranted profanity, and asserts that the attorney made statements to the jury which amounted to an admission of his guilt. In addition, the defendant argues that the attorney frequently referred to the

theory of defense of dwelling despite the trial court's refusal to tender an instruction concerning this defense.

The State argues that the tone of the closing argument is a trial tactic which represents an exercise of judgment and therefore cannot be used to establish ineffective representation of counsel. Assuming that the tone of argument can establish incompetence, the State asserts that the requisite substantial prejudice without which the outcome would have been different, is absent in this case.

■■ Our supreme court recently reiterated the test to be applied in determining whether a defendant was afforded effective assistance of counsel. In *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, the court stated that a conviction will not be reversed because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.

The competency of an attorney is determined from the totality of his conduct at trial. (*People v. Murphy*; *People v. Somerville* (1969), 42 Ill. 2d 1, 245 N.E.2d 461.) Mistakes in strategy will not render the representation incompetent. (*People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142; *People v. Shestiuk* (1978), 59 Ill. App. 3d 296, 376 N.E.2d 56.) In addition, the fact that another attorney in the better light of hindsight may have handled the trial in a different manner is not an indication of the trial counsel's incompetence. *People v. Rodgers* (1978), 58 Ill. App. 3d 719, 374 N.E.2d 721.

In his testimony the defendant admitted shooting Walls; however, he claimed that Walls had grabbed his wife by the neck and he believed that Walls was going to kill her. Obviously, the defendant was relying on the theory of justifiable use of force in defense of himself or another as a justification for the killing. Ill. Rev. Stat. 1975, ch. 38, par. 7—1.

The trial court instructed the jury concerning this defense but refused to deliver an instruction concerning the use of force in defense of a dwelling. Despite his knowledge of this refusal, the trial counsel in his closing argument repeatedly referred to defense of dwelling as justification for the shooting. A few excerpts of counsel's argument follow:

> "By the same token if someone came into your house and demanded fifty dollars of you and threatened you if you didn't give him fifty dollars that he would turn off your lights even if you owed him fifty dollars and you are a rent payer or have a lease or owned your house and he went downstairs because you refused to give him fifty dollars and he turned off your lights and you went downstairs to that property right, you have a right to defend that property and if necessary kill. This is the law of self defense. * * *

* * *

Believe me they want people to give up their guns. I have got two of them and nobody is going to make me give up my guns. I keep one under my bed. I carry one when I go out looking for witnesses. If anybody ever came to my house and demanded fifty dollars and threatened to put out my lights if I didn't give them fifty dollars and when I refused to give him fifty dollars he went downstairs and put out my lights, I would go downstairs with a gun. I wouldn't do all this bullshitting you have been hearing around here for three or four days. I would put this gun in his ear, up his nose, in his mouth and I would pull the trigger and no jury in the world would convict me. Because I have a right to have my lights on. Not even Edison Company can turn them off. And not any janitor who doesn't even live in the building."

We believe this erroneous emphasis on defense of dwelling together with the offensive tone of argument resulted in prejudice to the defendant.

The record disclosed numerous other examples of offensive argument which may have prejudiced the jury. In arguing that the jury should disregard the instruction on voluntary manslaughter, the defendant's attorney stated:

"I told you in the beginning this wasn't murder. It was either murder or nothing. I told you what a lawyer, an old time lawyer in this building used to tell his juries. Give him the juice or turn him loose. I am asking you to do the same thing. Find him guilty of murder or turn him loose, but don't pay any attention to voluntary manslaughter."

We also agree with the defendant's contention that a statement by his attorney was tantamount to an admission of guilt. The attorney argued to the jury as follows:

"Now, you will be read an instruction on voluntary manslaughter. I will submit, I will admit, that when Houston Walls cut out the lights that he provoked Wade Robinson. And I will admit that and he created an intense passion in Wade Robinson to do something drastic to Houston Walls. And he picked up a gun and he goes down and he kills him. I will admit all of this. But once in the basement, once in the basement when Wade Robinson saw what he was faced with when Houston Walls turned on Annie Pearl, voluntary manslaughter went out the window."

At no time did the defendant testify that he went into the basement with an intent to kill Walls.

■■ The State contends that because the evidence of the defendant's guilt is overwhelming, this alleged admission could not have influenced the jury's verdict. We disagree with this conclusion. Although the defendant

admitted shooting Walls, he maintained that the killing was justifiable. Both the defendant and Annie testified that Walls had his hands around Annie's neck when the defendant shot him. Selvy, the other eyewitness to the shooting, testified that Walls pushed Annie out of his way just prior to the time the defendant shot the deceased. Because the evidence of guilt was not overwhelming, this admission, together with the above-discussed remarks of counsel, may have influenced the guilty verdict.

A review of the complete record convinces us that the conduct of the defendant's trial counsel was of such low caliber that it amounted to no representation at all. In particular, we find that the errors and argument of the attorney in his closing statement resulted in substantial prejudice to the defendant and thus deprived him of a fair trial. Therefore, the defendant is entitled to a new trial.

Our disposition of the above issue makes it unnecessary to address the issue of the alleged prejudicial cross-examination of the defendant's wife. However, because the question of the propriety of the jury instruction is likely to arise again on retrial, we will briefly address that issue.

The defendant argues that the jury was instructed erroneously concerning the justifiable use of force. The instruction delivered by the court was as follows:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or to another."

The defendant claims that it was error for the court to refuse to give two separate instructions to the jury on self-defense and defense of others. He also cites as error the omission of "or another" from the first paragraph of the instruction.

We find no error in the trial court's decision to give one instruction on the justifiable use of force. And, although the words "or another" are incorporated in the second paragraph of the instruction, we believe it would have been preferable also to include those words in the first paragraph. We, therefore, recommend that the trial court deliver such an instruction in the new trial.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby reversed and this matter is remanded for a new trial.

Reversed and remanded.

SIMON, P. J., and RIZZI, J., concur.