THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE EDWARDS, Defendant-Appellant.

First District (1st Division) No. 1—87—2785

Opinion filed July 22, 1991.

Michael J. Pelletier and James Chadd, both of State Appellate Defender's Office, of Chicago, and Eddie Edwards, of Dixon, *pro se*, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and William Pistorius, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant Eddie Edwards (defendant) was convicted of murder and sentenced to 20 years in the Illinois Department of Corrections. Defendant appeals his conviction on the grounds that he was (1) denied a fair trial because the prosecutor made an improper closing argument which shifted the burden of proof to defendant to prove his innocence; (2) denied his sixth amendment right to confrontation because the court sustained an objection to a question of a witness' sexual relationship with defendant which would show her bias; (3) denied his due process right to present a defense because the court sustained an objection to a question posed to a police officer regarding traffic patterns of particular streets; (4) denied a fair trial because the prosecutor, in closing argument, told the jury that the State represented everyone in the courtroom; (5) not proven guilty beyond a reasonable doubt; (6) denied effective assistance of counsel; (7) denied a fair trial because of certain comments made by the State regarding his alibi witnesses; and that (8) the trial court coerced a deadlocked jury into rendering a hastened verdict.

On July 18, 1986, Rhonda Jenkins (victim) was shot and killed outside her cousin Debra Mitchem's home at approximately 11:15 p.m. Defendant was indicted, tried by a jury and found guilty of murdering victim.

The evidence at trial showed that defendant dated victim approximately three years before victim broke off her relationship with him. The relationship had been over for about one year before victim was killed. Following their breakup, defendant and victim saw each other, although the nature of their continued relationship is disputed. Defendant testified that he continued to socialize with victim once or twice a week after she had moved out of the apartment he had rented

for her. Defendant claimed that victim frequently stopped by the variety store he owned and occasionally spent weekends at his apartment. An employee of defendant also testified that victim seemed happy not frightened when she stopped by the store. The State's witnesses testified that defendant and victim did not continue to see each other socially, and in fact, victim ignored defendant when they were present at the same place.

The State's witnesses also disclosed situations where defendant and victim were hostile to one another. For example, Mitchem related an incident where she was forced to call the police on defendant after he pretended to pull a gun on victim. Mitchem, along with her brother, John Relf, testified that about a week before victim was killed, defendant attended a birthday party at Mitchem's home. Victim was present and defendant attempted to talk with her although she clearly indicated to defendant that she did not want to speak with him. Defendant became agitated with victim and refused to leave her alone. Finally, defendant was asked to leave the party, and when he refused, Relf physically pushed him out the door. The State also introduced evidence that victim filed a criminal complaint for assault against defendant which was to go to trial about a month after she was killed.

The day of victim's murder, Relf telephoned defendant and asked him to pick him up after work. At approximately 4 to 4:30 p.m., defendant picked up Relf and Henry Barnes and drove to his store. The men stayed at the store drinking beer and talking for about an hour until defendant's wife and son showed up at the store. Defendant drove his wife and son home, accompanied by Relf and Barnes. After dropping off his wife and son, the men continued on to another house where they stayed for about 20 minutes. Defendant then drove Barnes to his home, and he and Relf arrived back at the store at approximately 6:30 p.m.

While at the store the two socialized until, as defendant testified, they went across the street to a tavern and shot a game of pool and then returned to the store. The two men stayed at the store until it closed. Relf testified that the store closed at 10:05 p.m., but defendant testified it closed at 10:30 p.m. According to Relf, the two men drove defendant's employee to 71st and Indiana at approximately 10:15 p.m. Thereafter, defendant drove Relf to 1132 East 42nd Street. Relf claimed the traffic was light; however, defendant claimed it was heavy. Relf got out of the car to look for his friend. After about three minutes, Relf returned to the car and stated that he could not find his friend.

The two men proceeded west on 43rd Street until Relf recognized some friends and requested defendant pull the car over so he could get out. Relf got out of the car and went to talk to the friends. Relf stated that he talked to his friends for approximately 10 minutes. At approximately 10:45 p.m. Relf walked back to where the car had been parked and it was no longer there. Relf did not see the car leave and does not know when it left. The time period was corroborated by one of the friends with whom Relf spoke.

According to defendant, after Relf exited his car a police officer told him to move his car because he was parked in a bus stop. Defendant drove around the block and returned but the police officer told him to "move on." Defendant pulled around the corner and looked for Relf, but he did not see him, so he drove to Lois Craft's home at 70th and Halsted. Craft testified that he arrived at approximately 11:45 p.m. to midnight. The two drove in Craft's car to a lounge at 127th and Michigan but did not stay there long. The couple then went to the Holiday Inn at 172nd and Halsted, where they spent the night and left the next morning at approximately 10 a.m. Craft corroborated the majority of this testimony.

Mitchem was a key witness for the State. Mitchem testified that she was victim's cousin and had known defendant for five years and was very familiar with him and his car. According to Mitchem, victim arrived at her home at about 10 p.m. on July 18, 1986. She and victim picked up a pizza, brought it to Mitchem's home and ate it with Mitchem's son. Victim decided to leave at approximately 11:10 p.m. Victim left out the back door as Mitchem stood on her back porch and watched her. As victim walked toward the gate, Mitchem saw defendant walking just inside the gate. Defendant said, "Hey, y'all. How y'all doing?" Mitchem said, "Hello" to defendant, but victim said nothing. Victim continued to walk to her car, which was parked in front of Mitchem's home. Defendant turned and followed victim. Mitchem, at this point walked to her front door so she could watch victim get into her car safely. Mitchem heard victim scream, "Stop it, Edward." Mitchem rushed to the front door because she thought defendant was beating victim. Mitchem heard three gunshots which came from somewhere in front of her home.

When Mitchem got to the front door and went outside, she saw victim running down the street and defendant standing with a gun in his hands. After standing there a moment, defendant fled to his car. Victim fell in the middle of the street approximately four houses south of Mitchem's house. Defendant got into his four-door silver Cadillac, which Mitchem identified, and proceeded to victim's body

and drove around it. Terrell Mitchem, Mitchem's son, testified that defendant had called and asked for victim just prior to coming to Mitchem's house. Mitchem ran over to victim, who was not moving. An ambulance arrived and took victim to a hospital.

Dr. Eupil Choi, a Cook County medical examiner, performed an autopsy on victim. At defendant's trial he testified that victim had died from multiple gunshot wounds.

Following closing arguments, the jury retired to deliberate at 7:09 p.m. At 12:26 a.m. the jury sent a note to the court saying they were deadlocked. The court asked the foreperson if the jury could reach a verdict if they continued deliberating. The foreperson responded that the jury could. The court ordered the jury to continue deliberating and made arrangements for the jury to spend the night at a motel.

The following day at 5:07 p.m. the court went on record in the presence of the State and the defense and stated that it believed the jury had spent too much time deliberating on what the court believed was a relatively simple case. At that point the jury had spent over 14 hours deliberating. Therefore, the court admonished the jury pursuant to *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601. The jury again retired and returned a verdict of guilty within three hours. The court sentenced defendant to 20 years' imprisonment. This appeal was timely filed.

Defendant contends that the State's following argument denied him a fair trial:

"And then think about something else, if this man [Edwards] didn't kill Rhonda Jenkins, well, who in the world did, because there isn't one single sled [*sic*] of evidence that anyone else killed her, anyone had any reason to do that."

Defendant asserts that the above statement was improper because it attempted to shift the burden of proof to the defense by asking the jury to find defendant guilty because there was no evidence anyone else had committed the offense.

■ In order to preserve an issue for appellate review, "[b]oth a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis omitted.) (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; Ill. Rev. Stat. 1983, ch. 38, par. 116—1.) The defendant, however, failed to object to the State's comment at trial and further failed to raise the issue in its motion for new trial. The defendant correctly points out that failing to make the proper objection to the State's comment constitutes waiver *in the absence of plain error. (Enoch,* 122 Ill. 2d at 187, 522 N.E.2d at 1130; *People v.*

*Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Supreme Court Rule 615(a) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (73 Ill. 2d R. 615(a).) The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091, 1094; *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

■ Initially, this court should note that during closing argument defense counsel stated: "Maybe something was upset, because Rhonda had said, 'I'm going back and live with Eddie.' That seems motive to me. 'No, you are not.' 'Yes, I am.' 'Boom, boom.' " This statement was clearly an attempt to imply that someone else had motive to kill victim. There was not, however, any evidence produced at trial to support this implication. In response to defense counsel's argument, the State truthfully commented that there was not any evidence that anyone else killed victim. When such remarks are invited by defense counsel, the defendant is precluded from complaining about them. (*People v. Holman* (1989), 132 Ill. 2d 128, 547 N.E.2d 124; *People v. Webster* (1988), 175 Ill. App. 3d 119, 529 N.E.2d 741.) In *People v. Taylor* (1986), 146 Ill. App. 3d 45, 51, 496 N.E.2d 263, 267, the prosecutor stated, "What did the defense prove? They proved that there was [*sic*] inconsistencies. *** They didn't prove that Melvin Fulton or Patty Howard or any of our witnesses was [*sic*] unbelievable." The court found that these statements were not an attempt to shift the burden of proof, but rather were an argument regarding the strength of the State's evidence and, therefore, were not improper. We find that the prosecutor's statement in the case at bar similarly is not improper.

The cases defendant relies upon are distinguishable. For example, in *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503, the prosecutor asked, "Now where's the evidence that the defendant didn't do it?" (Emphasis omitted.) (*Giangrande,* 101 Ill. App. 3d at 402, 428 N.E.2d at 507.) This statement implied that the defendant had a burden to introduce evidence. (*Giangrande,* 101 Ill. App. 3d at 402, 428 N.E.2d at 507.) But, in the case at bar, the statement in question was a response to defense counsel's implication that someone else committed the murder.

In *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734, the prosecutor *repeatedly* stated that there was no evidence which showed defendant was not guilty. (*Harbold,* 124 Ill. App. 3d at 372,

464 N.E.2d at 741.) Similarly, in *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432, the prosecutor *repeatedly* argued to the jury that the defendant had the burden of raising a reasonable doubt of her guilt. Despite sustained objections to this line of argument, the prosecutor continued to make such arguments. (*Weinstein*, 35 Ill. 2d at 469, 220 N.E.2d at 434.) The court held that, "[i]n essence, they [the statements] destroyed the presumption of innocence, to which defendant was entitled at all stages of trial, [citation] and they imposed upon defendant a heavier burden than the law required while lessening that of the prosecution. [Citation.] Additionally, the argument was tantamount to telling the jury that defendant had the burden of proving her innocence." *Weinstein*, 35 Ill. 2d at 470, 220 N.E.2d at 434.

This case is analogous to *People v. Jones* (1988), 123 Ill. 2d 387, 528 N.E.2d 648, because in both cases the State's comment was an isolated one, the State reminded the jurors that the defendant must be proved guilty beyond a reasonable doubt and the instructions also stated that the burden of proving the guilt of the defendant beyond a reasonable doubt remains upon the State throughout the case. In *Jones*, the court held that the prosecutor's statements did not interfere with the jury's proper evaluation of the evidence. (*Jones*, 123 Ill. 2d at 414, 528 N.E.2d at 660.) The State's comments did not substantially prejudice the defendant in a manner that resulted in depriving defendant of a fair trial. See *People v. White* (1989), 192 Ill. App. 3d 55, 548 N.E.2d 421.

■ Defendant contends that he was denied his sixth amendment right of confrontation because the court prevented defense counsel from exposing a possible bias and motive to lie by a State's witness when defense counsel attempted to question Mitchem concerning whether she had sexual intercourse with the defendant in the past. It is within the ambit of the constitutional guarantee of confrontation to impeach a State's witness by showing a witness' bias. (*People v. Rufus* (1982), 104 Ill. App. 3d 467, 472, 432 N.E.2d 1089, 1094.) The court should allow the widest latitude in cross-examination for establishing bias. (*Rufus*, 104 Ill. App. 3d at 473, 432 N.E.2d at 1095.) This latitude, however, rests in the sound discretion of the trial court. (*People v. Maldonado* (1989), 193 Ill. App. 3d 1062, 1069, 550 N.E.2d 1011, 1018; *People v. Franklin* (1976), 42 Ill. App. 3d 408, 420, 355 N.E.2d 634, 644.) An appellate court only interferes in the trial court's decision where there is a clear abuse of discretion resulting in manifest prejudice to the defendant. *Franklin*, 42 Ill. App. 3d at 420, 355 N.E.2d at 644.

■ The trial court's discretion to restrict the scope of cross-examination comes into play only after the court has permitted, as a matter of right, sufficient cross-examination to satisfy the constitutional guarantee. (*Rufus*, 104 Ill. App. 3d at 473, 432 N.E.2d at 1095.) To determine the constitutional sufficiency of cross-examination, this court should look not to what a defendant had been prohibited from doing, but to what he had been allowed to do. (*Maldonado*, 193 Ill. App. 3d at 1069, 550 N.E.2d at 1016.) If the entire record indicates that the jury were made aware of adequate factors concerning relevant areas of impeachment of a witness, then no constitutional question arises merely because defendant was prohibited from pursuing another line of questioning. *Rufus*, 104 Ill. App. 3d at 473-74, 432 N.E.2d at 1095, quoting *People v. Hines* (1981), 94 Ill. App. 3d 1041, 1048, 419 N.E.2d 420, 425-26.

■ The jury in the case at bar had sufficient information to make a discriminating appraisal of Mitchem. Mitchem testified that she dated defendant prior to the victim's dating him. Moreover, Mitchem testified that she was not happy about the fact that the victim and defendant were dating. Defendant testified that he had dated Mitchem prior to dating the victim. Testimony also shows that Mitchem and the defendant had not dated for five years prior to the slaying of the victim. Finally, in closing argument, defense counsel argued that defendant did, in fact, "sleep with Debra Mitchem and he slept with her for eight or nine months ***. So, the relationship between Debra Mitchem and this man developed into something more than a casual relationship. They were engaged in sexual intercourse." These facts were not even in the record. After reviewing the record, the jury had sufficient information to determine whether Mitchem's testimony was worthy of belief. See *Maldonado*, 193 Ill. App. 3d at 1069, 550 N.E.2d at 1016.

Defendant attempts to support his argument with case law. Defendant's citations, however, are distinguishable in that they involve situations where defense counsel was not allowed to inquire into certain areas (see *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526 (defense counsel was not allowed to expose that witness was being rewarded for testimony and was charged with several crimes); *People v. Thompson* (1979), 75 Ill. App. 3d 901, 394 N.E.2d 422 (defense counsel was not allowed to cross-examine a witness regarding the fact that he would not have been able to file an insurance claim to recover the loss unless the criminal proceedings were brought)), the cited cases bolster the State's position because they involve situations where the court found the desired testimony too re-

mote, uncertain and speculative (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9), or the cited cases involve situations where the trial court had, in fact, allowed testimony regarding bias and the appellate court affirmed (*People v. Hominick* (1988), 177 Ill. App. 3d 18, 531 N.E.2d 1049). In the case at bar, defense counsel was allowed to elicit testimony regarding Mitchem's relationship with defendant in order to demonstrate her bias and, therefore, defendant was not denied his sixth amendment right of confrontation.

■ Defendant argues that he was denied his due process right to present a defense because the trial court sustained an objection to defense counsel's question regarding traffic conditions. The disputed questions asked by defense counsel were "How would you classify the traffic situation on a July evening, on Cottage Grove, in the city of Chicago?" "Is Cottage Grove a heavily traveled street?" and "Are you familiar with the traffic conditions on Cottage Grove during the summer period?" It is true that defendant elicited testimony from this police officer regarding the facts that he was familiar with the street and surrounding area and had traveled the street many times in his 19 years as a police officer. The disputed questions, however, are overly broad and would require the police officer to draw conclusions of fact for which there was no foundation that he had personal knowledge of the conditions during the particular night and time in question. Furthermore, the police officer testified that neither he nor any other officer within his unit or command drove the distance from 43rd Street and Ellis to 9827 South Merrill on the night victim was murdered.

Questions are irrelevant when they are overbroad and do not refer to a specific instance. (*Kleeman v. Fragman Construction Co.* (1980), 91 Ill. App. 3d 455, 462, 414 N.E.2d 1064, 1069.) Therefore, defense counsel's above questions were irrelevant because they were overbroad and did not refer to a specific night or a specific time. Additionally, the trial court's decision to sustain the objections to the questions should be upheld because the questions called for conclusions rather than facts based upon personal observations of specified incidents. (*Kleeman*, 91 Ill. App. 3d at 462, 414 N.E.2d at 1069.) The trial court's determination was not a clear abuse of discretion which resulted in manifest prejudice to defendant. *People v. Bryant* (1983), 115 Ill. App. 3d 215, 450 N.E.2d 744.

At the beginning of its closing argument, the State remarked, "[W]e, the People of the State of Illinois, me and Mr. Burke, who represent the People, we represent you, represent everyone in the courtroom, even in a manner of speaking the defendant, to present reli-

able, credible, evidence before the court and you are to determine that in the final analysis." Defendant failed to object to this statement at trial and in his post-trial motion; therefore, the issue is waived on appeal. (*People v. Fields* (1990), 135 Ill. 2d 18, 59-60, 552 N.E.2d 791, 809-10.) Nevertheless, we review the issue under the plain error doctrine. 73 Ill. 2d R. 615(a).

■■ Relying on *People v. Vasquez* (1972), 8 Ill. App. 3d 679, 291 N.E.2d 5, and *Greenberg v. United States* (1st Cir. 1960), 280 F.2d 472, defendant argues that the State's remarks were improper because it attempted to portray the State as an impartial participant in the trial. In each of the above two cases the prosecutor stated that he was the "thirteenth juror." The court found this statement to be an attempt to make the jury believe that he was an impartial member of an adversarial system. (*Vasquez*, 8 Ill. App. 3d at 681, 291 N.E.2d at 7; *Greenberg*, 280 F.2d at 474-75.) The State, in the case at bar, accurately stated that it represented the people of the State of Illinois. Moreover, the State did inform the jury that the State had the burden of proving defendant guilty beyond a reasonable doubt. We hold that the State's remarks were not so flagrant or inflammatory as to substantially prejudice the defendant, and had the statement not been made, the result of the trial would not have been different. See *People v. White* (1989), 192 Ill. App. 3d 55, 62, 548 N.E.2d 421, 426.

■■■ Defendant contends that he was not proven guilty beyond a reasonable doubt. Defendant further alleges that the evidence of his guilt was entirely circumstantial. Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the defendant. (*People v. Jenkins* (1983), 117 Ill. App. 3d 33, 452 N.E.2d 867.) A defendant can, however, be convicted solely on circumstantial evidence. (*People v. Bennett* (1987), 162 Ill. App. 3d 36, 515 N.E.2d 840.) The trier of fact does not have to be satisfied beyond a reasonable doubt as to each link in the chain of circumstantial evidence. (*People v. Hall* (1986), 114 Ill. 2d 376, 409, 499 N.E.2d 1335, 1348.) It is sufficient if all the evidence taken as a whole satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. (*Hall*, 114 Ill. 2d at 409, 499 N.E.2d at 1348.) As the defendant correctly points out, the trier of fact determines the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) Once the defendant has been found guilty, this role of the trier of fact is preserved as a legal conclusion and, accordingly, upon review, all of

the evidence is considered in a light most favorable to the prosecution. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

The record reveals that when all of the evidence is taken in the above light, defendant was guilty of murder beyond a reasonable doubt. Defendant admitted to having a boyfriend/girlfriend relationship with victim until victim broke it off. Two witnesses testified that defendant would try to communicate with victim, but victim refused to speak with him. Additionally, there was testimony that defendant had hostile tendencies toward victim, including a pending assault charge filed by victim against him. One witness stated that she saw defendant and conversed with him moments before she heard the gunshots and saw defendant run to his car as victim ran until she collapsed in the middle of the street. Defendant then circled victim's body in his car before driving away.

■■ Nevertheless, defendant argues that his defense created some serious questions concerning whether defendant could have been at the scene of the crime. Notwithstanding, the trier of fact may disregard exculpatory accounts or other evidence that tends to support or be consistent with defendant's innocence and rest its decision instead on circumstantial evidence of guilt presented by the State. (*People v. Viano* (1985), 139 Ill. App. 3d 560, 487 N.E.2d 623.) Consequently, we hold that the proof of the circumstances was sufficiently conclusive in nature, and those circumstances lead to a satisfactory conclusion which produces a reasonable and moral certainty that defendant and no one else committed the crime. See *People v. Bruce* (1989), 185 Ill. App. 3d 356, 541 N.E.2d 708.

■■ ■ Defendant contends that he was denied effective assistance of counsel because defense counsel failed to properly investigate and present evidence that would have changed the entire outcome of the trial. The United States Supreme Court established a two-prong test to review claims of ineffective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In order to prevail on such a claim, the defendant must establish (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) A reasonable probability is " 'a probability sufficient to undermine confidence in the outcome,' " and defendant bears the burden of showing that, absent counsel's errors, " 'the factfinder would have had a reasonable doubt respecting guilt.' " (*People v. Garza* (1989), 180 Ill. App. 3d 263, 268, 535 N.E.2d 968, 971, quot-

ing *Strickland*, 466 U.S. at 694-95, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.) The competency of an attorney is determined by reviewing the totality of his conduct at trial. (*People v. Robinson* (1979), 70 Ill. App. 3d 24, 27, 387 N.E.2d 1114, 1116.) Mistakes in strategy will not render the representation incompetent. (*People v. Shestiuk* (1978), 59 Ill. App. 3d 296, 376 N.E.2d 56.) Additionally, the fact that another attorney with the benefit of hindsight claims he may have handled the case differently does not indicate that the trial attorney was incompetent. *People v. Rodgers* (1978), 58 Ill. App. 3d 719, 374 N.E.2d 721.

■■■ Defendant maintains that defense counsel failed to properly investigate and present evidence at trial that defendant could not have been in the vicinity where the murder occurred. Specifically, defendant complains that defense counsel informed defendant that he hired a private detective to testify to the "time element" of the case, but counsel failed to call a private investigator to the witness stand.

Defense counsel did, in fact, present evidence and argue that defendant could not have been in the area of the scene of the crime because of the time factor. Counsel examined defendant, Relf and Craft on the stand in an attempt to draw a scenario which would have made it impossible for defendant to have committed the crime because of the sequence of events and time. Further, counsel attempted to elicit testimony from a police officer concerning traffic and the amount of time it would have taken defendant to drive from point A to point B. This testimony, however, was properly barred because the officer did not have personal knowledge of the traffic conditions on that particular night. Moreover, through questioning, counsel discovered that no police officer drove any route that defendant could have possibly taken to arrive at the crime scene. Regardless, defendant does not allege that the private investigator could have, in fact, testified that it would have been impossible for defendant to reach the scene of the crime in the time frame consistent with other witnesses' testimonies.

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (*Garza*, 180 Ill. App. 3d at 268, 535 N.E.2d at 971, citing *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Defendant was provided with effective assistance of counsel, and defendant failed to establish a reasonable probability that counsel's alleged errors substantially prejudiced defendant such that the outcome would have been different; therefore, defendant is not entitled to a new trial.

The cases defendant cites are distinguishable from the case at bar. In *Robinson*, defense counsel argued:

"If anybody ever came to my house and demanded fifty dollars and threatened to put out my lights if I didn't give them fifty dollars and when I refused to give him fifty dollars he went downstairs and put out my lights, I would go downstairs with a gun. I wouldn't do all this bullshitting you have been hearing around here for three or four days. I would put this gun in his ear, up his nose, in his mouth and I would pull the trigger and no jury in the world would convict me. Because I have a right to have my lights on." (*Robinson*, 70 Ill. App. 3d at 28, 387 N.E.2d at 1117.)

The record also disclosed numerous other examples of offensive argument. Counsel further compounded his ineffectiveness by arguing that "[defendant] picked up a gun and he goes down and he kills him" when at no time did defendant testify that he went to the basement with an intent to kill. *Robinson*, 70 Ill. App. 3d at 28, 387 N.E.2d at 1117.

The defense counsel in *People v. Baldwin* (1989), 185 Ill. App. 3d 1079, 541 N.E.2d 1315, failed to present psychiatric records of the defendant which were clearly pertinent to the issue of insanity. (*Baldwin*, 185 Ill. App. 3d at 1090, 541 N.E.2d at 1322.) The court held that the inadequate investigation of the defendant's records and the prejudicial effect on the fitness issue was sufficient to meet the ineffective assistance of counsel standard. (*Baldwin*, 185 Ill. App. 3d at 1090, 541 N.E.2d at 1323.) In *Garza*, defense counsel failed to obtain photographs which a witness viewed and from them tentatively identified the defendant, and counsel further failed to introduce evidence of the fact that there were inconsistencies in the identification of the defendant. (*Garza*, 180 Ill. App. 3d at 269, 535 N.E.2d at 970.) In the case at bar, although defense counsel did not call a private investigator to testify to the "time frame," defense counsel did elicit testimony concerning the "time frame" of the murder and of the inconsistencies in the State's key witness' testimony. There is no indication in the record that the representation received by defendant fell below an objective standard of reasonableness. We find that the defendant was afforded effective assistance of counsel.

Defendant contends that the following statements by the State were improper and denied him a fair trial:

"[T]hink about what the defense witnesses told you. They have Lois, Cassandra, [*sic*] Diane Richardson, [*sic*] not wone [*sic*] of them sees anything that contradicts exactly what Debra told you. None of them were with Eddie Edwards between 11:00 and 11:30.

There is something else Lois told you; they weren't even planning on staying at the Holiday Inn. She's trying to tell you they weren't planning on staying there so you know he didn't take any extra clothes with him, think about that. As I told you, this man got caught in a real big lie up there and it was a last stitch effort because he had forgetten [*sic*] about the white shirt he's wearing the next day."

Further, defendant maintains that the State asked improper questions which elicited the fact that Richards and Craft did not talk to police for an entire year about their potential alibi testimony even though they knew defendant had been arrested and charged with murder. Defendant never objected to these statements or questions at trial or in a post-trial motion for a new trial; therefore, they are waived. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; Ill. Rev. Stat. 1983, ch. 38, par. 116—1.) Despite this fact, defendant requested that we review the issue under the plain error doctrine. (73 Ill. 2d R. 615(a).) The plain error doctrine may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *Lucas*, 88 Ill. 2d at 251, 430 N.E.2d at 1094.

■■ Defendant correctly states that a prosecutor may comment on the credibility of witnesses as long as the comments are fair inferences. (*People v. Evans* (1988), 173 Ill. App. 3d 186, 527 N.E.2d 448.) The State did not improperly attempt to discredit defendant's witnesses. Rather, the State truthfully referred to the fact that defendant's witnesses failed to come forward in a timely fashion and highlighted the inconsistencies in the defense's witnesses' and defendant's testimonies. The statements made by the State do not constitute error. See *Evans*, 173 Ill. App. 3d 186, 527 N.E.2d 448.

■■ Defendant also contends that the prosecutor interjected his personal opinion into the case. The record is devoid of any instance in which either prosecutor expressed his personal opinions about the case; therefore, there was no error as argued by defendant. We find that there was no error as alleged by defendant; therefore, he was not denied a fair trial by any of the remarks made by the State.

At 12:26 a.m., after 5 hours and 18 minutes of deliberating, the jury sent a note to the court explaining that they were in a deadlock. The court asked the foreperson whether she believed there was a reasonable probability that the jury might reach a verdict. The foreperson responded that she believed they could. The jury were sequestered overnight and began deliberating the next morning. Again, after 7 hours and 13 minutes, the trial judge called the jury back into

the courtroom and gave them the *Prim* instruction at 5:12 p.m. The Illinois Supreme Court in *Prim* directed courts in this State to instruct a deadlocked jury in manner similar to that cited below. There was no objection by counsel to the giving of this instruction. The instruction was given as follows:

"In order to return a verdict it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. If you can do so without violence to an individual's judgment. Each of you must decide the case for yourself but do so openly and partially with the evidence and your fellow jurors.

In the course of your deliberations do not hesitate to re-examine your own views and change your opinion if convinced erroneous. Do not surrender honest conviction or wait [*sic*] and affect solely because of the opinion of the fellow jurors or the mere purpose of returning a verdict.

You are not participants. You are judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case. Please continue to deliberate."

The jury retired and deliberated for another 2 hours and 12 minutes before reaching a verdict. Defendant maintains that the trial judge's conduct had the effect of creating pressure on the jury instead of relieving it.

 Defendant admits that the timing of the supplemental instructions is within the trial court's discretion (*People v. Cowan* (1985), 105 Ill. 2d 324, 473 N.E.2d 1307), and that the reviewing court must determine whether the language used actually interfered with or coerced the verdict to the prejudice of the defendant. (*People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d 868.) When considering the coercive nature of the instruction, we must scrutinize the time at which the instruction was given and the length of time the jury deliberated after receiving the instruction. *People v. Bonds* (1980), 87 Ill. App. 3d 805, 410 N.E.2d 228.

In *People v. Dungy* (1984), 122 Ill. App. 3d 314, 461 N.E.2d 485, the jury deliberated for more than five hours and then retired for the night. The following day, the jury deliberated for another seven hours before sending a note to the court explaining that it was a "hung jury." The court informed the jury that it was the province of the court to decide whether there was a hung jury. Over defense counsel's objection, the court gave the *Prim* instruction to the jury. The jury deliberated an additional 40 minutes before reaching a verdict.

(*Dungy*, 122 Ill. App. 3d at 324, 461 N.E.2d at 492.) The appellate court found that the trial court did not abuse its discretion in giving the *Prim* instruction. (*Dungy*, 122 Ill. App. 3d at 324, 461 N.E.2d at 492.) The timing of the giving of the instruction in *Dungy* is similar to that of the case at bar; therefore, we find that the timing was not coercive to the jury. Moreover, after receiving the *Prim* instruction, the jury in *Dungy* deliberated only for an additional 40 minutes, while the jury in the case at bar deliberated for over two hours.

Defendant cites cases which are favorable to the State. In *Jenkins v. United States* (1965), 380 U.S. 445, 13 L. Ed. 2d 957, 85 S. Ct. 1059, the jury sent a note to the court stating that they could not reach a verdict because of insufficient evidence. The court responded by informing the jury that "[y]ou have got to reach a decision in this case." (*Jenkins*, 380 U.S. at 446, 13 L. Ed. 2d at 958, 85 S. Ct. at 1060.) The United States Supreme Court found this coercive. (*Jenkins*, 380 U.S. at 446, 13 L. Ed. 2d at 958, 85 S. Ct. at 1060.) The court in the present case did not demand a verdict; rather, it warned jurors not to "surrender honest conviction or wait [*sic*] and affect solely because of the opinion of the fellow jurors or the mere purpose of returning a verdict." In *United States v. Cook* (8th Cir. 1981), 663 F.2d 808, also cited by defendant, the Eighth Circuit upheld an instruction even though the court *neglected* to warn the jurors "not to surrender a conscientiously held belief." (*Cook*, 663 F.2d at 810.) We hold that it was not plain error for the trial court to have given the *Prim* instruction in the manner and at the time in which it did.

For the reasons discussed above, the judgment of the circuit court of Cook County and defendant's conviction are affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.