THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD WEATHERSPOON, Defendant-Appellant.

First District (3rd Division)    No. 1—91—2406

Opinion filed June 29, 1994.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Lisa Travis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial defendant Gerald Weatherspoon was found guilty of criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(1)), robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1(a)) and unlawful restraint (Ill. Rev. Stat. 1989, ch. 38, par. 10—3(a)) and sentenced to 12 years' imprisonment. Defendant now urges this court to reverse his conviction on grounds that: (1) the trial court erred in excluding evidence of the victim's sexual history and restricting

cross-examination of the victim's prior drug addiction; (2) the prosecutor made improper remarks during closing argument; and (3) the jury verdicts were inconsistent since he was convicted of criminal sexual assault and robbery while being acquitted of aggravated criminal sexual assault based upon the same elements.

We affirm the trial court.

On June 30, 1990, defendant was charged by indictment with four counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(a)(2), (3), (4)), criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(1)), two counts of aggravated kidnapping (Ill. Rev. Stat. 1989, ch. 38, par. 10—2(a)(3)), kidnapping (Ill. Rev. Stat. 1989, ch. 38, par. 10—1(a)(2)), robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1(a)), unlawful restraint (Ill. Rev. Stat. 1989, ch. 38, par. 10—3(a)), and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8)) for events surrounding defendant's sexual intercourse with S.G. (victim) earlier that morning.

Prior to trial the court denied the State's motion *in limine* to preclude the defense from presenting evidence regarding the prior arrests and substance abuse treatment of the victim, and granted the State's motion *in limine* to bar admission of her sexual history pursuant to the Illinois rape shield statute (Ill. Rev. Stat. 1991, ch. 38, par. 115—7).

At trial, the State's first witness (Mary) testified that on June 29, 1990, she dined and consumed alcoholic beverages with the victim in a restaurant before leaving at approximately 9 p.m. for a bar where they each had another drink and spoke with several people, one of whom she identified as defendant. About 10:30 p.m., when Mary informed the victim that she would be leaving for home, the victim stated that she intended to stay awhile longer and then take a cab home. Mary opined that the victim was not intoxicated when she left the bar.

The State next called the victim, who corroborated Mary's testimony and added that after having four drinks and dancing with defendant she decided to leave although she did not feel intoxicated. As she entered the foyer to telephone for a taxi, defendant grabbed her arm, placed a hard object behind her neck and led her outside to an area between two condominium buildings. Defendant then punched her in the face and pushed her to the ground, calling her a "bitch" and stating she was "going to like this" before sexually assaulting her. After the act, defendant ripped two gold necklaces from her throat. She told defendant that she was not going to run and that he could hold her purse to make sure. As defendant reached for the purse, she began running toward the bar where she later

telephoned her father. The victim went to the hospital for injuries including a black eye and bruises and lacerations around her neck before returning to the scene with the authorities where she recovered one of her earrings and a cross pendant previously secured to one of the necklaces.

On cross-examination the victim admitted that she began using alcohol as a teenager and had been diagnosed as addicted to alcohol and cocaine. She was hospitalized for her cocaine addiction in 1988 and 1989, and denied using any cocaine upon completing her last treatment. She also denied being under the influence of alcohol when she attempted to leave the bar.

The victim further testified that her cocaine use had caused her to suffer nose bleeds, and that she had used cocaine with alcohol in the past. She denied experiencing blackouts since her hospitalization in 1989 or that her inability to recall "bits and pieces" of the evening at issue was attributable to her alcohol consumption. She also denied voluntarily leaving the bar with defendant to use cocaine or for any other purpose.

Susan Manning testified that she worked as a waitress at the bar and on June 29, 1990, recalled serving alcohol to defendant and the victim, whom she recognized from five or six prior visits, and observing them dance. She also remembered the victim calling her former boyfriend, Gabriel Cotton, an obscenity. Manning stated the victim left the bar late in the evening and returned in hysterics stating that she had been raped. Manning observed that the victim's face was covered with blood, her nose was also bleeding and her clothes were torn and stained with dirt, grass and blood.

The victim's father testified that on June 30, 1990, at 2 a.m. he received a phone call from his daughter, who sounded distressed, and he subsequently picked her up at the bar, bleeding from the nose with lacerations on her face and wearing a torn blouse stained with blood and dirt. His daughter did not appear to be under the influence of drugs or alcohol. Several hours later, he accompanied her to the scene with the police and recovered the described items.

Officer Carl Humbert, an evidence technician, testified that he met the victim at the hospital to photograph her injuries and collect her clothing. He established the chain of custody for the evidence collected. Officer Humbert also accompanied the victim and her father to the scene, which he described as a lawn between two apartment buildings with bloodstains and exposed dirt indicating that the area had been "disturbed," and confirmed finding the described items.

Rodney Anderson, a forensic serologist, testified that he found no

seminal material upon examination of the victim's vaginal swabs. He discovered a pubic hair in the victim's pubic hair that was consistent with the pubic hair standard given by defendant, and a pubic hair from the victim's pantyhose which did not match either her or defendant's pubic hair standard and was not necessarily related to the occurrence at issue. Anderson opined the bloodstains on the grass could have originated from the victim but not defendant.

Dr. Michael McCormick, the emergency room physician who treated the victim on the morning of June 30, 1990, described her facial injuries as consistent with receiving a blow from a fist, and her neck injuries as consistent with a chain being forcibly removed. He stated the redness and abrasions at the entrance of her vaginal vault appeared to be new and were consistent with forcible sexual intercourse. He did not believe she was clinically intoxicated even though he smelled alcohol on her breath and registered a blood-alcohol level of .194, nor did he see evidence of cocaine use. Dr. McCormick considered the victim's injuries "consistent with her version of what she told me had happened."

At the close of the State's case, the trial court entered a directed verdict for defendant on two counts of aggravated criminal sexual assault, both counts of aggravated kidnapping, kidnapping and aggravated battery on a public way.

The defense called Willie Smith, a drug abuse counselor, who testified in March 1988 he attended an interview with the victim, who indicated that she suffered from blackouts and memory loss.

Betsy Johnson, a registered nurse, treated the victim in April 1989 for symptoms of drug use including blackouts and memory loss.

Kate Mahoney, the director of a substance abuse prevention and treatment program who never met or evaluated the victim, stated it would be "highly likely" for someone who began drinking after receiving treatment for alcohol and cocaine addiction to revert to drug use.

Dr. Donald Sellers described the theory of cross-addiction and opined that using one substance could trigger a craving for another. He also stated a person with a .194 blood-alcohol level could be considered intoxicated with the possibility of blackouts and short-term memory loss.

Clarence Jackson accompanied defendant to the bar and stated that defendant was dancing with the victim and that they seemed "friendly." Jackson related that no one in the group used cocaine that night.

Roger Heath was a patron at the bar that evening who observed the victim dancing with a dark-skinned black man. Later, he noticed

her walk toward the front door and the man followed approximately six to eight feet behind her. When the victim returned to the bar, she appeared to be "messed up" and stated "I have been raped."

After admitting he was convicted of aggravated battery against a police officer in 1989, defendant testified that he met the victim at the bar, where they talked and danced for awhile in an arousing manner before she asked him if he had any drugs. He responded that he had some cocaine which he agreed to share outside the bar. Before leaving, the victim mentioned that her boyfriend was at the bar and that she did not want him to see her leave with defendant. As she exited the bar, defendant went to a restroom and then met her outside. They walked to defendant's car and shared four lines of cocaine, after which the victim asked if he would sell her some of the drug or take her somewhere for this purpose. When defendant could not accommodate her requests, she asked in a seductive tone of voice if she could "do something for the cocaine" and began kissing him. They went into the back seat of the car and engaged in sexual intercourse.

Defendant exited the car to soothe a leg cramp and redressed. Upon reentering the car, defendant refused her request for the cocaine until they finished having sex. She then became upset and began calling him vulgar names while she redressed and exited the car. Defendant soon drove away from the premises, never seeing her again. On cross-examination defendant admitted consuming at least eight alcoholic beverages that evening and he felt "tipsy" when he was in the car with the victim. He also snorted cocaine at least three times prior to his arrival at the bar, admitting that he had used cocaine for three years and frequently carried the drug upon his person.

The jury found defendant guilty of criminal sexual assault, robbery and unlawful restraint. After hearing arguments in mitigation and aggravation, the trial court sentenced him to 10 years' imprisonment for criminal sexual assault to run consecutively with a two-year term for unlawful restraint and concurrently with a four-year term for robbery.

Defendant initially argues that the trial court denied his right to confront witnesses by refusing to admit evidence regarding the victim's sexual history.

The Illinois rape shield statute provides that the prior sexual activity of the alleged victim is inadmissible except as evidence concerning the victim's past sexual conduct with the accused. (Ill. Rev. Stat. 1991, ch. 38, par. 115—7.) The statute is designed to prevent the defendant from harassing and humiliating the prosecutrix at trial with evidence of specific acts of sexual conduct with persons

other than the defendant since such evidence has no bearing on whether she consented to sexual relations with the defendant. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 180, 552 N.E.2d 726, quoting *People v. Ellison* (1984), 123 Ill. App. 3d 615, 626, 463 N.E.2d 175.) Exclusion of such evidence keeps the jury's attention focused on issues relevant to the controversy at hand and promotes effective law enforcement because victims can report crimes of rape and deviate sexual assault without fear of having the intimate details of their past sexual activity brought before the public. *Sandoval*, 135 Ill. 2d at 180, quoting *Ellison*, 123 Ill. App. 3d at 626.

Defendant contends his confrontational right supersedes the statutory protection granted the victim where the evidence tends to establish bias, prejudice or motive or is relevant " ' "where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue." ' " (*Sandoval*, 135 Ill. 2d at 185, quoting *People v. Hackett* (1984), 421 Mich. 338, 355 n.4, 365 N.W.2d 120, 128 n.4, quoting *United States v. Kasto* (8th Cir. 1978), 584 F.2d 268, 271 n.2.) Specifically, he argues that evidence that the victim previously engaged in sexual activity to obtain drugs would have established her consent based upon her prior pattern of behavior and a motive to falsely accuse defendant, since her drug treatment records documented her feelings of guilt and shame "over prostituting for cocaine."

In *Sandoval*, the Illinois Supreme Court recognized the "prior pattern exception" as warranted only in extraordinary circumstances to establish that the particular practice had such distinctive characteristics to make it the complainant's *modus operandi*. (*Sandoval*, 135 Ill. 2d at 186.) There, the court rejected the defendant's argument that the rape shield statute unconstitutionally denied him the right to confront the complainant where he was not prevented from presenting his theory of the case, *i.e.*, that the complainant, his former girl friend, consented to anal intercourse but accused him of rape as retaliation for rejection. (*Sandoval*, 135 Ill. 2d at 175, 181; see *People v. Jackson* (1991), 216 Ill. App. 3d 375, 576 N.E.2d 308 (defendant charged with criminal sexual assault properly precluded from cross-examining complainant regarding prior pregnancies to establish her heterosexuality at the time of the occurrence).) As in *Sandoval*, this case does not present a situation in which the jury was presented with what defendant alleges is a completely unbelievable portrait of the complainant which is only rebuttable with introduction of the proffered testimony. (*Sandoval*, 135 Ill. 2d at 177; *cf. People v. Gray* (1991), 209 Ill. App. 3d 407, 568 N.E.2d 219 (complainant's protection under the rape shield statute superseded by defendant's

right to confront her fear of pregnancy by another man, especially since her testimony was the only direct evidence of his guilt and it was uncontroverted that the circumstantial evidence was inconclusive).) Defendant had ample opportunity to challenge the complainant's credibility without resort to additional extrinsic evidence that courts and the legislature have labelled highly prejudicial. *Sandoval*, 135 Ill. 2d at 190.

●1 The record shows the trial court's decision to exclude evidence that the victim had previously had sex to obtain drugs did not prevent defendant from presenting his theory of the case to the jury. Defendant presented several experts who described the recurring nature of cross-addiction and health care professionals who related their experiences with the victim while seeking drug treatment. Defendant's testimony regarding their consumption of alcoholic beverages and cocaine suggested the victim remained cross-addicted despite the treatment. He denied ever striking, threatening or robbing the victim or forcing her to engage in sexual intercourse, and presented witnesses to corroborate his defense of consent by relating her provocative dancing as well as her decision to exit the bar separately, purportedly to avoid the jealousies of her former boyfriend.

Defendant next challenges the trial court's refusal to allow cross-examination regarding the victim's failure to complete drug treatment and matters related to her addiction on grounds that the exclusion of such evidence left the jury with the impression that she was no longer addicted, diminishing his theory of consent.

While the impeachment of a State witness is within the ambit of the constitutional right of confrontation and should be accorded the widest latitude on cross-examination, such latitude is within the discretion of the trial court, and a conviction will not be reversed unless the court's decision resulted in manifest prejudice to the defendant. (*People v. Edwards* (1991), 218 Ill. App. 3d 184, 193, 577 N.E.2d 1250.) The court's discretion to restrict the scope of cross-examination arises only after it permits, as a matter of right, sufficient cross-examination to satisfy the constitutional guarantee. (*Edwards*, 218 Ill. App. 3d at 194.) To determine the constitutional sufficiency of cross-examination, a reviewing court looks not to what the defendant had been prohibited from doing but what he was allowed to do. (*Edwards*, 218 Ill. App. 3d at 194.) If the entire record indicates the jury was made aware of adequate factors concerning relevant areas of impeachment of the witness, no constitutional question arises merely because the defendant was precluded from pursuing another line of questioning. *Edwards*, 218 Ill. App. 3d at 194 (defendant's cross-examination of the State's witness properly

restricted since he was allowed to elicit testimony regarding his sexual relationship with her and to allude to the nature of their relationship on closing argument).

●2 The jury in the case at bar had sufficient information to make a discriminating appraisal of the victim. She admitted on cross-examination being addicted to alcohol and consuming at least six drinks on the evening at issue. She also admitted using alcohol in combination with cocaine, a drug she had used for several years which caused her to suffer nose bleeds, and being twice hospitalized for her alcohol and cocaine dependency. She further testified that she became acquainted with defendant at the bar, conversed with him and offered to buy him a drink for his birthday. Since the trial court allowed cross-examination of the victim regarding her addictions and relationship with defendant to demonstrate motive, he was not denied his sixth amendment right of confrontation.

Defendant argues that the prosecutor committed reversible error by misstating evidence regarding medical testimony of the victim's injury, misstating the law regarding the presumption of innocence, and suggesting facts not in evidence by referring to a case not in issue.

●3 Defendant first contends that the prosecutor's description of the victim's vaginal area as torn or lacerated improperly suggested her injury was more serious than the medical testimony provided since Dr. McCormick used the word "abrasion." The record shows, however, that defendant has waived this issue by failing to object at trial and failing to object to use of the word "laceration" in his post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124.

Defendant also maintains the prosecutor's statements regarding lowering his cloak of innocence to the floor misled the jury about his presumption of innocence. However, defendant cannot raise this argument on appeal since he failed to object to these statements at trial. (*Enoch*, 122 Ill. 2d at 186-87.) Notwithstanding waiver, a prosecutor may argue the defendant is guilty when he or she states, or it is apparent, that such argument is solely based on evidence. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 178, 514 N.E.2d 970 (prosecutor's statement for the jury to join murder victim's pleas was not error since she based her argument on the evidence rather than personal beliefs); *People v. Rush* (1992), 238 Ill. App. 3d 806, 815-16, 606 N.E.2d 132.) The record read in its entirety shows the prosecutor committed no error by relating to the jury that although every defendant comes to trial cloaked with a presumption of innocence, the evidence presented in this case lowered the cloak to reveal defendant

committed the crimes at issue. *Cf. People v. Ray* (1984), 126 Ill. App. 3d 656, 467 N.E.2d 1078 (prosecutor's litany of "vituperative and inflammatory" remarks including comment upon defendant's cloak of innocence warranted reversal).

Defendant further asserts error regarding the prosecutor's single reference to a well-known murder case wherein the victim's screams were unheeded during the events at issue. A reference to a well-known case in closing argument is not improper if the comments do not suggest a personal similarity between the defendant and another criminal or inflame the jury. (*People v. Upshaw* (1981), 103 Ill. App. 3d 690, 699, 431 N.E.2d 1138, citing *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 324, 379 N.E.2d 847.) Here, the prosecutor's statements focused on the victim rather than defendant in attempting to persuade the jury not to discredit her testimony merely because no person responded to her screams. (See *People v. Tolefree* (1980), 85 Ill. App. 3d 844, 848, 407 N.E.2d 604 (prosecutor's reference to the same case as the case at issue did not warrant reversal).) Moreover, the trial court cured any alleged error by sustaining defendant's immediate objection and admonishing the jury regarding the nature of closing arguments. *People v. Herrett* (1990), 137 Ill. 2d 195, 214-15, 561 N.E.2d 1.

●4 Finally, defendant argues the jury's verdicts were legally inconsistent since he was convicted of criminal sexual assault and robbery but not of aggravated criminal sexual assault. An accused generally cannot be convicted of an offense that was not charged unless the offense of which he is found guilty is a lesser included offense of the one charged. (*People v. McClellan* (1992), 232 Ill. App. 3d 990, 1008, 600 N.E.2d 407 (jury verdicts acquitting defendant of murder and convicting him of voluntary manslaughter and armed robbery were neither legally nor logically inconsistent).) Defendant was charged with and acquitted of aggravated criminal sexual assault based upon the commission of criminal sexual assault and robbery. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(4).) Since the record supports the conclusion that defendant completed the sexual assault before stealing the victim's jewelry, the crimes are separable although occurring during a brief time span. (See *People v. Taylor* (1971), 132 Ill. App. 2d 473, 482, 270 N.E.2d 628.) Consequently, the verdicts are legally and logically consistent. *People v. Tigner* (1990), 194 Ill. App. 3d 600, 603, 551 N.E.2d 304 (defendant properly convicted of criminal sexual assault and robbery although the issue of penetration was resolved in his favor); *cf. People v. Frias* (1983), 99 Ill. 2d 193, 198, 457 N.E.2d 1233 (defendant acquitted of murder but found guilty of armed violence received inconsistent verdicts since the latter charge was predicated upon a conviction for the former).

For the foregoing reasons, we affirm.

Affirmed.

RIZZI and CERDA, JJ., concur.