SECOND DIVISION

February 16, 1999

No. 1-97-4531

ANGELO PALANTI,

Plaintiff-Appellant,

v.

DILLON ENTERPRISES, LTD.,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Richard J. Billik, Jr.,

Judge Presiding.

JUSTICE GORDON delivered the opinion of the Court:

Plaintiff brings this appeal from the trial court's entry of judgment on a jury verdict for defendant in his personal injury action.  He contends that the jury verdict was tainted because (1) the court improperly instructed the jury during its deliberations, and (2) a note that the jury sent out during its deliberations revealed that physical coercion had occurred in the jury room in arriving at the verdict.  For the reasons explained below, we find the errors have been waived and, further, are without merit.  Accordingly, we affirm.

FACTS

In May 1992 plaintiff Angelo Palanti filed suit against defendant Dillon Enterprises, Ltd.  Plaintiff's complaint alleged that plaintiff was injured when he slipped and fell in a parking lot near which defendant was doing remodeling work.  The case went to trial in July 1997, and the jury returned a verdict in favor of defendant.  The record contains neither a transcript nor a bystander's report of the trial, any pre-trial proceedings, or of any proceedings which occurred during the jury deliberations.  Because of this state of the record, the only indications of what transpired before the jury reached its verdict are plaintiff's post-trial motion, the argument at the hearing on that motion (which was transcribed), the common-law record (including the notes which the jury sent out during its deliberations), and the court's written order denying the motion.

Plaintiff's post-trial motion contended that the verdict was against the manifest weight of the evidence and that plaintiff was entitled to a new trial because of error committed by the trial court in certain actions it took during jury deliberations.  Specifically, plaintiff contended that the court committed reversible error "by allowing these proceedings to continue subsequent to receipt of notation from Jury foreman, on August 1, 1997, at or about the hour of 5:00 p.m."  Plaintiff attached the jury note to which he referred as an exhibit to his motion; it read in full as follows:

"We have one juror who has stated emphatically he will not change his mind and basically refuses to deliberate in good faith.  At this point, the remaining eleven are of the firm belief that there will 
never
 be any unanimous decision.  This is not through lack of effort.  One person refuses to consider the 
FACTS
 and several people are becoming agitated to the point of possible physical confrontations.

"If you have any suggestions that will resolve this problem we need to hear them 
now
.

"I'm not sure what you are able to legally do to offer myself or other jurors advice or solving this stalemate.

"We simply cannot deliberate with a single juror if he refuses to do so."  (Emphasis in original.)

The note was signed by the jury foreman.  Plaintiff contended in his post-trial motion that the court erred when it proceeded to poll the jury without a court reporter present and to give the 
Prim
 instruction "as per I.P.I. 1.05,"
(footnote: 1) even though counsel for both plaintiff and defendant "expressed opinion that mistrial should be declared."

Plaintiff further alleged in the post-trial motion that at or about 6:30 p.m., the jury sent out another note; the court again conferred with counsel for plaintiff and defendant; and the court again instructed the jury "as per I.P.I. 1.05."  In addition, plaintiff contended in his motion that "it was agreed that mistrial would be granted should jury not return by 8:00 p.m."  Nevertheless, plaintiff stated, the court "held [the] jury beyond the agreed time and at approximately 10:15 p.m. verdict was returned."  Plaintiff argued that by giving the jury Illinois Pattern Jury Instruction 1.05 twice, orally, without a court reporter present, "no evidence exists as to the propriety of instruction and accuracy of same."  Plaintiff stated that the court "did hasten the action of the jury, irrespective of its worthy motive and *** by so doing its conduct was improper." 

At the hearing on plaintiff's motion, in addition to repeating a number of factual assertions from the motion, plaintiff also asserted that the jury foreman was a police officer and was in possession of a weapon in the jury room.  He also contended that the jury had deliberated from approximately 1:00 to 6:30 p.m. on Thursday, July 31, and from approximately 9:30 a.m. to 10:15 p.m. on Friday, August 1, before returning a verdict.  In his reply argument in support of the motion, plaintiff further stated as follows:

"And I would like to bring to the Court's attention that IPI 1.05, as read by the Court, uses the term violence.  Not physical, but violence.  That is reflected in 1.05.  In the note that we got back from the juror [
sic
], they're close to physical confrontation."

The common-law record contains the actual notes the jury sent out, including the note sent out at 5:00 p.m. on August 1 (the second day of deliberations), the text of which has been set out above.  It also contains the text of another jury note which states on its face that it was sent out at 6:00 p.m. on August 1 (and is most likely the note to which plaintiff referred in his post-trial motion as having been sent out at 6:30, as the record contains no other notes sent out at or near that time).  This note requested an answer to the following question:

"Are we allowed to consider at all the contract between Dillon + Russ Brun?  It is an essential element in our group decision making process.  In other words, is that contract part of the evidence we are supposed to consider?"

Written on the bottom of the note in a different handwriting is as follows:

"You have heard the testimony and have been presented with the evidence in court.  You are to rely on your recollection of that evidence.  The court has also instructed you on the law in this case.  You are to decide this case based upon the evidence and the law."

The common-law record also contains a third jury note, which stated on its face that it had been sent earlier on August 1, at 2:17 p.m.  (No mention was made of this note in plaintiff's written post-trial motion or in the argument thereon.)  It read as follows:

"We are all in agreement except for one of us.  It is 11-1.  However, we have been at 11-1 for a very long time now, dating back to last night.  We have reviewed all the evidence and we are still at 11-1.  If you could please meet with us to clarify the law or something of that nature, maybe that would help.  Thank you."

The trial court denied plaintiff's post-trial motion in its entirety, and issued a memorandum order detailing its reasoning and making a number of factual findings.  The court stated that trial had commenced on July 21, 1997, and the case went to the jury in the afternoon of July 31.  After adjourning in the "early evening" of July 31, the jury reconvened on Friday, August 1, 1997, at approximately 10:00 a.m.  

The court stated in its memorandum that during Friday afternoon, "the court received a note from the jury regarding their difficulties in reaching a verdict."  After reviewing the note with the attorneys for both parties, court and counsel all "agreed that the jury be instructed under I.P.I. 1.05 (the 'Prim' instruction) *** and agreed with the reading of the instruction to the jury," after which the jury resumed deliberations.

The memorandum recounted that subsequently, at approximately 5:00 p.m., the jury submitted another note regarding their deliberations.  After reviewing the note with counsel, the court "proposed a response, which was agreed to by counsel.  ***  Both counsel complimented the court on the manner in which the inquiry by the jury was addressed."  Later, at approximately 8:00 p.m., after the jury had requested dinner in order to continue deliberating, "pursuant to agreement with counsel, the court brought the jury into the courtroom, with both counsel present.  The foreperson informed the court that the jury wished to continue deliberating."  Thereafter, at 9:05 p.m., the jury returned a unanimous verdict in favor of defendant.  The court polled each juror on its own initiative and subsequently, neither counsel requesting any further action, the jury was discharged.

The court noted that during Friday afternoon the court had inquired of counsel for both parties if a court reporter would be present, but neither party arranged for one.  The court also specifically stated that plaintiff did not object to proceeding without a court reporter, did not request an opportunity to secure a reporter's services, and raised no question regarding the lack of a reporter before filing his post-trial motion.  Further, the court stated that although the numerical division of the jury was revealed in the first and second notes, that information was unsolicited by the court, in that it did not at any time request the jury to disclose its numerical division.  The court also stated that plaintiff's representation that plaintiff, defendant, and the court had agreed that a mistrial would be declared if the jury had not reached a verdict by 8:00 p.m. was "unfounded and clearly not accurate."  Finally, the court found that the verdict was not against the manifest weight of the evidence.

Plaintiff appeals, contending that the cause must be remanded for a new trial because consideration of the entirety of the circumstances reveals that the jury was coerced into reaching a verdict.  Plaintiff contends that the mere fact that the 
Prim
 instruction was given twice constituted reversible error in that doing so coerced the jury into reaching a verdict.  Plaintiff argues that the coercive effect of the multiple 
Prim
 instructions was heightened by the facts that the jury knew, because of the contents of the notes it sent out, that the court (1) knew how the jury was divided, and (2) was aware that there was a possibility of a physical confrontation among the jurors.  For the reasons given below, we affirm.

ANALYSIS

I. WAIVER

As a preliminary matter, defendant contends that plaintiff has waived the error of which he now complains by failing to object at trial.  We agree.  The trial court specifically found that plaintiff agreed that the deadlock instruction should be read to the jury on Friday afternoon, after the jury had sent out its 2:17 p.m. note indicating it was deadlocked.  The court also found that plaintiff's counsel not only agreed to the trial court's subsequent response to the 5:00 p.m. note (the nature of which was not described in the court's findings), he complimented the court on that response.  The court also noted that plaintiff's counsel never objected to proceeding without a court reporter and never requested an opportunity to attempt to find a reporter, even after the court inquired of both counsels on that subject.

It is apparent from the court's written findings that the first time plaintiff raised any objection to any of the actions taken by the court in response to the notes sent out by the jury during the course its deliberations was in his post-trial motion, after the jury had rendered its verdict in favor of defendant.  This is not sufficient to preserve an allegation of error regarding jury instructions for appellate review.  The rule is clear that errors raised for the first time in a post-trial motion which were not objected to or raised at the time at which the errors were purportedly committed are not preserved for appellate review.
(footnote: 2)  This is true with respect to jury instructions as well as errors in, 
e.g.
, admission of evidence or closing argument.  See, 
e.g.
, 
People v. Watkins
, 293 Ill. App. 3d 496, 508, 688 N.E.2d 798, 806 (1997) (noting, after finding that the court did not err in giving of two anti-deadlock instructions to the jury, that in any event defense counsel had acquiesced in the court's giving of the instructions, and accordingly "defendant invited any error and cannot now be heard to complain"); 
Stephenson v. Dreis & Krump Manufacturing Co.
, 101 Ill. App. 3d 380, 387, 428 N.E.2d 190, 195 (1981) (if a party has had an opportunity to object to any proposed instruction before its submission to the jury, it "cannot allow the jury to receive an instruction without specific objection and then for the first time in a post-trial motion or an appeal claim that error was committed"); 
Grover v. Commonwealth Plaza Condominium Ass'n
, 76 Ill. App. 3d 500, 509, 394 N.E.2d 1273, 1280 (1979) ("a party cannot complain of the giving or refusal of an instruction unless the challenged matter is made the subject of objection both at the conference on instructions and in the post-trial motion, and all this is made part of the record"); 
LaPlaca v. Gilbert & Wolf, Inc.
, 37 Ill. App. 3d 259, 262, 345 N.E.2d 774, 776 (1976) ("Failure to make a specific objection at the instruction conference and then raising the objection for the first time in a post-trial motion or on appeal will not properly preserve the error for review").  In addition to the fact that it is incumbent upon a party to object while the trial court still has the opportunity to prevent or mitigate any adverse impact resulting from such error, "counsel cannot take a chance of failing to make objections and then, upon receiving what they consider an adverse jury verdict, claim error."  
Cook County v. Colonial Oil Corp.
, 15 Ill. 2d 67, 75, 153 N.E.2d 844, 848 (1958); 
accord
, 
Onderisin v. Elgin, J. & E. Railway Co.
, 20 Ill. App. 2d 73, 78, 155 N.E.2d 338, 341 (1959) (counsel cannot "sit idly by and permit instructions to be given the jury without specific objection and then be given the advantage of predicating error thereon by urging the error for the first time in a post trial motion").  The trial court explicitly stated that it gave both parties the opportunity to object to its replies to the 2:17 and 5:00 notes, and neither party did so.  In this regard we note that plaintiff's assertions that there were mentions of mistrials find no support in the record.  Plaintiff has manifestly waived any objection to the instructions given to the jury during deliberation.   

We note that even if the able trial judge had not on its own set out the facts which establish plaintiff's waiver, we would still be required to find waiver because of the plaintiff's failure to provide this court with a record which could support a contrary finding.

"To raise an issue on appeal concerning the giving of or the failure to give an instruction, the appellant must provide the reviewing court with the content of the instruction conference establishing that the appellant there raised the argument that he advances on appeal or else he is barred from raising it in the reviewing court."  
Brown v. Decatur Memorial Hospital
, 83 Ill. 2d 344, 350, 415 N.E.2d 337, 339-40 (1980).

Accord, 
Holder v. Caselton
, 275 Ill. App. 3d 950, 959-60, 657 N.E.2d 680, 688 (1995) (holding appellant had waived issue regarding jury instruction on appeal by her "failure to make a proper record" regarding her objection to the instruction); 
Zook v. Norfolk & Western Railway Co.
, 268 Ill. App. 3d 157, 165, 642 N.E.2d 1348, 1354 (1994) ("A party cannot complain of the giving or refusing of an instruction unless he makes the challenged matter the subject of an objection, both at the instructions conference and in the post-trial motion, and makes it a part of the record"); 
Aguinaga v. City of Chicago
, 243 Ill. App. 3d 552, 575, 611 N.E.2d 1296, 1313 (1993) ("in order to raise an issue on appeal concerning the giving of or failure to give a jury instruction, the appellant must provide the reviewing court with the content of the instruction conference establishing that the appellant raised that argument at the instruction conference").

We further note that the insufficiency of the record before us extends beyond facts pertaining to the waiver rule.  More substantively, the record does not even show that the court gave the 
Prim
 instruction twice.
(footnote: 3)  Although the trial court stated that it had given the 
Prim
 instruction in response to the jury's 2:17 p.m. note, the court did not state that it did so again after receiving the 5:00 p.m. note.  Rather, the court merely stated that it had given a "response, which was agreed to by counsel."  As counsel conceded at oral argument before this court, the facts in the record are insufficient to support plaintiff's assertion that the 5:00 response involved the giving of another 
Prim
 instruction.  Arguments made by an appellant which depend on facts which are not contained in the record are not sustainable on appeal.  
U.S. Minerals & Mining, Inc. v. Licensed Processors, Ltd.
, 194 Ill. App. 3d 428, 434, 551 N.E.2d 661, 665 (1990) ("The appellant has the duty to present the reviewing court with a complete record on appeal; any doubts arising from the incomplete record are therefore resolved against the appellant, and those issues which depend for resolution upon facts not in the record mandate affirmance"); 
Estate of Jacobs
, 189 Ill. App. 3d 625, 629, 545 N.E.2d 502, 504 (1989) ("any doubt arising from an incomplete record shall be resolved against the appellant.  ***  Affirmance is dictated when crucial facts are omitted in the record").  Accordingly, plaintiff's complaint regarding the multiple 
Prim
 instructions must be rejected on this basis as well.

Finally, although the plain error rule may be applied in civil cases (
Belfield v. Coop
, 8 Ill. 2d 293, 313, 134 N.E.2d 249, 259 (1956)), this is not a proper case for its invocation.  As civil trials "do not implicate sixth amendment concerns, the 'application of the plain error doctrine to civil cases should be exceedingly rare and limited to circumstances amounting to an affront to the judicial process.'"  
Holder
, 275 Ill. App. 3d at 959, 657 N.E.2d at 687, quoting 
Allison v. Stalter
, 251 Ill. App. 3d 127, 131, 621 N.E.2d 977, 979 (1993).  As previously pointed out, based on the sparsity of the record before us, there is no reason to conclude that any errors approaching an "affront to the judicial process" in fact occurred in this case.  Moreover, as shall be explained below, even if these alleged errors were not subject to waiver, we would not find the court to have acted improperly.

II. MULTIPLE 
PRIM
 INSTRUCTIONS

Plaintiff first complains that the court coerced the jury into reaching a verdict by giving the jury the 
Prim
 instruction twice when it was aware that the jury was divided 11-1.  As previously discussed, in addition to waiver resulting from plaintiff's failure to object, the issue must also be resolved against plaintiff because of his failure to provide us with a record which shows a basis for his claim.  But even assuming the truth of plaintiff's allegations we would not find the trial court to have erred.

Plaintiff's coercion argument has two parts.  He contends that it was erroneous without more to give the 
Prim
 instruction more than once and he suggests that the coercive effect of the multiple instructions was compounded by the fact that the trial court was aware of the numerical division of the jury at the time that it gave the instructions.  We reject both arguments.  In 
People v. Watkins
, referred to above, this court found no error in the court giving multiple 
Prim
-type instructions to a deadlocked jury, notwithstanding that the jury had informed the court not only of its numerical division, but also of the result the majority favored (conviction).  
Watkins
, 293 Ill. App. 3d at 507, 688 N.E.2d at 806.  The court noted that although in some situations it could be improper for a court to issue supplemental instructions to deadlocked jurors once having become aware that a majority of jurors favored conviction, an order instructing the jury to continue its deliberations was 
not
 erroneous where the trial court had received an 
unsolicited
 statement regarding the numerical division of the jurors.  
Watkins
, 293 Ill. App. 3d at 507, 688 N.E.2d at 805-6, citing 
People v. Iozzo
, 195 Ill. App. 3d 1078, 1086, 552 N.E.2d 1308, 1314 (1990), and 
People v. Farella
, 79 Ill. App. 3d 440, 445, 398 N.E.2d 615, 619 (1979).  To hold otherwise would lead to the unpalatable result that a trial court would be barred from giving a 
Prim
 instruction in any trial in which the jury provided the court with unsolicited information regarding its numerical division, regardless of whether the court believed the jury should receive the instruction.  In this case the information was unsolicited and moreover, was not as problematic as the information the court was given in 
Watkins
, in that in this case the court was not told whom the majority favored.
(footnote: 4)
In addition to 
Watkins
, 
Prim
 itself lends some support to our holding that multiple deadlock instructions are not 
per
 
se
 error.  Although 
Prim
 did not explicitly address the propriety of multiple deadlock instructions, the court explicitly directed Illinois trial courts to comply with the standards contained in the American Bar Association Minimum Standards Relating to Jury Trials (ABA Standards).  
Prim
, 53 Ill. 2d at 76, 289 N.E.2d at 609-10.  Both the 1968 Tentative Draft of the ABA Standards, from which 
Prim
 quoted at length, and the current edition of that work, state that "If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give 
or
 
repeat
" a deadlock instruction.  (Emphasis added.)  
Prim
, 53 Ill. 2d at 75, 289 N.E.2d at 609, quoting ABA Standards §5.4, at 145-56 (May 1968 Tentative Draft); ABA Standards §15-5.4 at 255 (3d ed. 1996).  The Commentary to the ABA Standards also provides that "[i]t is appropriate, however, for a court to give 
or repeat
 to the jury an instruction on its responsibilities in the course of deliberations.  This may be done when the jury has indicated its inability to reach an agreement or has deliberated for some time without reaching an agreement."  (Emphasis added.)  ABA Standards §15-5.4, Commentary, at 260 (3d ed. 1996).  
Cf.
 
People v. Zayas
, 131 Ill. 2d 284, 298, 546 N.E.2d 513, 519 (1989) (in which the court noted that the jury had deliberated for over a day and had been "repeatedly instructed" pursuant to 
Prim
; however, the court reversed defendant's conviction solely because of the introduction of hypnotically aided testimony and did not express any disapproval of the multiple 
Prim
 instructions).

The determination of whether and when to give 
Prim
 instructions is left to the discretion of the trial court, and its judgment will not be reversed absent an abuse thereof.  
People v. Cowan
, 105 Ill. 2d 324, 328, 473 N.E.2d 1307, 1309 (1985); 
People v. Edwards
, 218 Ill. App. 3d 184, 201, 577 N.E.2d 1250, 1261 (1991).  See also 
O'Neil v. Continental Bank, N.A.
, 278 Ill. App. 3d 327, 341, 662 N.E.2d 489, 499 (1996) (a trial court's decisions regarding jury instructions will generally not be reversed absent a clear abuse of discretion); 
Geers v. Brichta
, 248 Ill. App. 3d 398, 411, 618 N.E.2d 531, 540 (1993) (same).  In deciding whether to give the instruction the court should consider such factors as the length of time already spent in deliberation and the complexity of the issues facing the jury.  
Cowan
, 105 Ill. 2d at 328, 473 N.E.2d at 1309.  In determining whether a 
Prim
 instruction had a coercive effect upon the jury we examine the time at which the instruction was given and the length of time the jury deliberated after receiving the instruc-

tion.  
Edwards
, 218 Ill. App. 3d at 201, 577 N.E.2d at 1261.  

There is no basis for us to second-guess the trial court in this case.  Although plaintiff states that the case was a simple "slip and fall," and the issue of liability was not complex, there is no evidence in the record before us to substantiate his assessment.  The one fact of which we are aware is that the trial lasted from Monday, July 21 to Thursday, July 31, a total of eight trial days.  There is no basis for a conclusion that the court abused its discretion in determining that the case might legitimately take some time to decide, and the jury did not in fact deliberate for an inordinately long time.  See 
People v. Whitecotton
, 162 Ill. App. 3d 173, 514 N.E.2d 1160 (1987) (court did not abuse its discretion in causing jury to deliberate for 17 straight hours from 2 p.m. until 7 a.m. after trial lasting less than two days); 
People v. Gargano
, 10 Ill. App. 3d 957, 963, 295 N.E.2d 342, 346 (1973) (court did not abuse its discretion in allowing jury to deliberate for 29 to 30 hours after two-week trial involving two defendants and three felony charges).

Assuming that the trial court gave the jury a second 
Prim
 instruction in response to the 5:00 note, the jury had at that point been deliberating for approximately 11 to 12 hours (4 to 5 hours on Thursday and 7 hours on Friday).  After receiving the instruction, the jury continued to deliberate for an additional 4 hours (according to the trial court, the verdict was returned at 9:05 p.m.).  Especially considering the length of time which the jury took to arrive at a verdict after the purported second 
Prim
 instruction, we cannot find that the court's conduct coerced the jury into arriving at its verdict.  The 
Edwards
 court found no coercion on nearly identical facts.  See 
Edwards
, 218 Ill. App. 3d at 200-203, 577 N.E.2d at 1261-62 (finding no coercion where jury had deliberated for 5 hours on one day and slightly more than 7 hours on a second day before receiving 
Prim
 instruction and deliberated for slightly more than 2 hours after receiving the instruction before returning its verdict).  See also 
Prim
, 53 Ill. 2d at 71-72, 289 N.E.2d at 607 (finding that trial court's deadlock instruction to the jury did not "hasten[] the verdict" where jury had deliberated for 4 hours before receiving the instruction and returned verdict only 15 minutes thereafter); 
People v. Novak
, 242 Ill. App. 3d 836, 856, 611 N.E.2d 1203, 1216 (1993) ("in light of the two hours of deliberation after the jury heard the 
Prim
 instruction, the instruction itself cannot be said to have had a coercive effect on the jury"), 
aff'd on other grounds
, 163 Ill. 2d 93, 643 N.E.2d 762 (1994); 
People v. Hugues
, 230 Ill. App. 3d 192, 202, 595 N.E.2d 1, 7 (1991) (finding no coercive effect where instruction was given after 9 hours of deliberations and jury returned verdict 50 minutes later); 
People v. Dungy
, 122 Ill. App. 3d 314, 323-24, 461 N.E.2d 485, 491-92 (1984) (finding no coercion where jury had deliberated for 5 hours on one day and slightly more than 7 hours on a second day before receiving 
Prim
 instruction and returned verdict 40 minutes after receiving instruction).

III. PHYSICAL COERCION

Plaintiff's final allegation of error involves physical coercion during the jury deliberations.  The evidence upon which plaintiff relies is the 5:00 p.m. jury note, specifically that portion which states that "[o]ne person refuses to consider the 
FACTS
 and several people are becoming agitated to the point of possible physical confrontations."  As with plaintiff's claim of coercion based on the trial court's 
Prim
 instruction (or instructions), we find that even had this argument not been waived,
(footnote: 5) we would reject it on its merits.  

Plaintiff actually does not raise physical coercion as a separate and distinct issue.  Rather, he argues that the coercive effect he attributes to the multiple 
Prim
 instructions was further heightened by the fact that one of the jury notes in response to which the court gave the instruction indicated that physical violence was imminent.  We reject his argument in this regard because of the 4 hours which passed between the last 
Prim
 instruction and the verdict.  This is twice the longest amount of time which passed in any of the authorities cited above, all of which found 
Prim
 instructions not to have coerced the verdict, and exceeds the time which passed in 
Prim
 itself by a factor of 16.  The passage of such a significant amount of time provides the clearest possible evidence that a juror's will was not overcome by a purportedly coercive event.
(footnote: 6)  

Even if plaintiff had raised physical intimidation as a separate issue, we would reject his claim.  It is true that evidence of physical intimidation during the jury deliberations is a legitimate means of impeaching a verdict; indeed, it is one of the only accepted means of doing so.  
People v. Lee
, 294 Ill. App. 3d 738, 744, 691 N.E.2d 117, 122 (1998); 
People v. Rhoden
, 253 Ill. App. 3d 805, 809, 625 N.E.2d 940, 943 (1993); 
People v. Wilson
, 246 Ill. App. 3d 311, 323, 615 N.E.2d 1283, 1290 (1993).  However, in this case there is, once again, insufficient evidence to support plaintiff's claim.  The jury note does not indicate that any physical violence had occurred; indeed, it does not even reveal that any 
threat
 of violence had been made. 

Plaintiff paints a grim picture of a lone hold-out juror, struggling to hold fast to his convictions in the face of unanimous opposition and giving in only after being subjected to a physical altercation.  But this is mere speculation.  It is equally possible to speculate that majority members confided the extent of their agitation to the jury foreman outside the hearing of the holdout without having any confrontation with the hold-

out.  There is no basis for a conclusion that the hold-out was threatened; in fact, at least two facts in the record lead to the conclusion that he was not.  First, as we have previously noted, the jury did not reach a verdict until four hours after it submitted the 5:00 p.m. note.  It is reasonable to posit that if, as plaintiff alleges, the hold-out had changed his vote as the result of physical intimidation to which the note purportedly referred, the verdict would have been rendered substantially more rapidly.  Moreover, the court polled each juror after the verdict was rendered and no irregularities were revealed.  This fact also supports our determination that the verdict was properly reached.  See 
People v. Reid
, 221 Ill. App. 3d 695, 699, 583 N.E.2d 1, 4 (1991).  More compelling evidence of juror threats than exists in this case has been rejected as grounds for impeachment of a jury verdict.  In 
Reid
 a jury was sequestered for the evening while deadlocked at 11-1.  The lone hold-out juror received an anonymous telephone call at his hotel room during sequestration in which the caller stated "you son-of-a-bitch, we'll get you for that," then hung up.  The court held that the telephone call was insufficient to impeach the verdict, noting specifically that there was no evidence of any physical act and that the jurors all expressed agreement with the verdict when polled.
(footnote: 7)  See 
Reid
, 221 Ill. App. 3d at 699, 583 N.E.2d at 4, and cases cited therein.  The same indicia of coercion are absent in this case, and we find no basis to conclude that the jury arrived at its verdict illegitimately.

CONCLUSION

For the reasons above stated, we affirm the circuit court's entry of judgment for defendant on the jury verdict and its denial of plaintiff's post-trial motion.

Affirmed.

McNULTY and RAKOWSKI, JJ., concur.

FOOTNOTES
1:     
  Illinois Pattern Jury Instruction 1.05 is an instruction to be given to a jury which has announced it is deadlocked.  It is based on language endorsed by our supreme court in 
People v. Prim
, 53 Ill. 2d 62, 289 N.E.2d 601 (1972).

2:     
  With respect to plaintiff's contention on appeal regarding physical coercion, we note that plaintiff not only failed to raise any objection when he first learned of the purported error, he also failed to address this issue in his written post-trial motion.  Accordingly, this issue too has been waived for purposes of appellate review.

3:     
  In our analysis of plaintiff's allegation of physical intimidation we will also find insufficient evidence.  However, we will not discuss that claim here because it at least is based on 
something
 shown as of record, namely, the 5:00 jury note.  Although we will ultimately conclude that this note does not, in fact, reveal that physical intimidation occurred, it is at least a part of the record to which plaintiff can legitimately cite.

4:     
  We recognize that the instructions given in 
Watkins
 did not conform precisely to IPI 1.05.  See 
Watkins
, 293 Ill. App. 3d at 505-7, 688 N.E.2d at 804-5.  However, this fact strengthens 
Watkins
's support of our result, because in this case plaintiff admits that the instructions given by the trial court were taken directly from IPI, and IPI instructions are to be used by default.  155 Ill. 2d R. 239(a) ("Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law"); 
Van Winkle v. Owens-Corning Fiberglas
, 291 Ill. App. 3d 165, 177-78, 683 N.E.2d 985, 994 (1997) (IPI instructions must be used in civil cases unless inapplicable or inaccurate).  In other words, there was more reason to find error in 
Watkins
 than there is in the instant case, and the 
Watkins
 court nevertheless affirmed.

Nor is the persuasiveness of 
Watkins
 diminished by the fact that it was an appeal from a criminal conviction, rather than a civil judgment.  See 
Van Winkle
, 291 Ill. App. 3d at 172, 683 N.E.2d at 990 (deeming "irrelevant" the fact that authority upon which it based its result was criminal, rather than civil).

5:     
  As previously noted, plaintiff not only failed to raise this issue at the time, he failed even to mention it in his post-

trial motion.

6:     
  We mean that there literally could not be clearer evidence, because the law prohibits the introduction of juror affidavits or testimony regarding the manner by which the jury arrived at its verdict or even regarding the effect any physical intimidation may have had on the jury's reasoning.  
People v. Lee
, 294 Ill. App. 3d 738, 744, 691 N.E.2d 117, 122 (1998); 
People v. Rhoden
, 253 Ill. App. 3d 805, 809, 625 N.E.2d 940, 943 (1993); 
People v. Wilson
, 246 Ill. App. 3d 311, 323, 615 N.E.2d 1283, 1290 (1993).  In 
People v. Reid
 the court specifically declined to consider a juror's affidavit that a purported threat had not influenced his decision how to vote.  
People v. Reid
, 221 Ill. App. 3d 695, 698, 583 N.E.2d 1, 3 (1991).

7:     
  Although a special concurrence filed in 
Reid
 noted that there was no evidence to support the appellant's claim that the telephone call in fact was made by another of the jurors (
Reid
, 221 Ill. App. 3d at 700, 583 N.E.2d at 4 (Greiman, J., specially concurring)), the majority appears to have accepted appellant's contention for purposes of analysis.  See 
Reid
, 221 Ill. App. 3d at 698, 583 N.E.2d at 3.