# Illinois Official Reports

## Appellate Court

---

### *U.S. Bank National Ass'n v. Hartman*, 2016 IL App (1st) 151556

---

| | |
|---|---|
| Appellate Court Caption | U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BC3, Plaintiff-Appellee, v. JOSEPH HARTMAN, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-1556 |
| Filed | December 30, 2016 |
| Decision Under Review | Appeal form the Circuit Court of Cook County, No. 08-CH-16169; the Hon. Michael F. Otto, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John Patrick Joyce, Jr., of AXO Ltd., of Chicago, for appellant.<br><br>Harry N. Arger, Rose M. Tumialán, and Margaret Rhiew, of Sykema Gossett PLLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Lampkin and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    The instant appeal arises from the trial court's grant of summary judgment in favor of plaintiff U.S. Bank National Association on its foreclosure complaint and the court's subsequent order confirming the sale of defendant Joseph Hartman's home. Defendant argues that the trial court erred in granting summary judgment because plaintiff lacked standing to foreclose on defendant's mortgage, and further argues that plaintiff's complaint should be stricken because it contained a "blatant mischaracterization of fact." For the reasons that follow, we affirm.

¶ 2                                                    BACKGROUND

¶ 3    On May 1, 2008, plaintiff filed a complaint to foreclose defendant's mortgage. In setting forth the information on the mortgage, the complaint alleges: "Name of the mortgagee, trustee or grantee in the Mortgage: M.E.R.S., Inc., as nominee for MILA, Inc., d/b/a Mortgage Investment Lending Associates, Inc.," and further alleges: "Capacity in which Plaintiff brings this suit: Plaintiff is the trustee for the holder of the Mortgage given as security." The complaint alleges that defendant was the mortgagor on a condominium on Altgeld Street in Chicago and that he was in default of the monthly payments from January 2008 through the present. The complaint sought a judgment of foreclosure and sale, an order approving the foreclosure sale, and an order granting possession of the property.

¶ 4    Attached to the complaint was a copy of the executed and recorded mortgage, as well as a "lost document affidavit." The "lost document affidavit" stated that the note could not be located in plaintiff's records. The "affidavit" was not signed or notarized.

¶ 5    On November 5, 2008, plaintiff filed a motion for an order of default against defendant, alleging that defendant had been served, a total of 60 days had elapsed since the date of service, and no motion or answer had been filed by defendant.

¶ 6    On January 2, 2009, defendant filed his appearance and an answer to the foreclosure complaint. In the answer, defendant admitted the above-quoted allegations concerning the "[n]ame of the mortgagee, trustee or grantee" and the "[c]apacity in which Plaintiff brings this suit." Defendant denied the allegations that he was in default of the mortgage. Defendant's answer did not contain any affirmative defenses, but only asked for an order dismissing plaintiff's complaint against him.

¶ 7    On January 9, 2009, despite defendant's January 2 appearance, the trial court entered an order of default against defendant, finding that he had failed to appear and/or plead. On the same day, the court entered a judgment for foreclosure and sale. On January 30, 2009, defendant filed a petition to vacate the default judgment, claiming that he had filed his appearance on January 2 but mistakenly went to the wrong courtroom on January 9. The resolution of defendant's petition is not contained in the record on appeal, but it was presumably granted, as further proceedings continued in the case.

¶ 8    On May 1, 2009, plaintiff filed a motion for summary judgment, claiming that there were no material issues of fact and that plaintiff was entitled to summary judgment. Attached to the motion was a "supplemental affidavit" from Chris Decker, an authorized employee of Wilshire Credit Corporation, the current servicer of the loan. The affidavit stated, in relevant part, that "[p]laintiff is the holder and owner of the note *** and mortgage *** granted to

M.E.R.S., Inc., as nominee for MILA, Inc., D/B/A Mortgage Investment Lending, on January 24, 2006 by [defendant], and secured by the property commonly known as *** West Altgeld Street, Unit ***, Chicago, Illinois 60614." The affidavit further stated that "[o]wnership of the subject mortgage was transferred from M.E.R.S., Inc., as nominee for MILA, Inc., D/B/A Mortgage Investment Lending to [plaintiff]." Attached to the affidavit was a copy of the executed note, as well as a copy of the executed and recorded mortgage.

¶ 9    Also attached to the affidavit was a copy of an assignment of mortgage, in which Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for MILA, Inc., d/b/a Mortgage Investment Lending, assigned defendant's mortgage to plaintiff. The assignment is dated April 30, 2008, one day before the filing of plaintiff's complaint for foreclosure, and was recorded on July 2, 2008.

¶ 10    Defendant did not file a response to the motion for summary judgment and, on July 7, 2009, the trial court granted plaintiff's motion for summary judgment. On the same day, the court entered a judgment for foreclosure and sale.

¶ 11    On April 27, 2012, defendant filed an emergency motion to vacate the judgment of foreclosure and to stay the sale of the property. In the motion, defendant claimed that neither he nor his counsel was aware of the judgment of foreclosure entered on July 7, 2009. Defendant further claimed that the property was scheduled for a sheriff's sale on May 1, 2012, but that he had entered into a contract for the sale of the property to the holder of the second mortgage on the property. Defendant asked for the judgment of foreclosure to be vacated in the interests of justice. Attached to the motion was an affidavit that was notarized but was not signed. On April 30, 2012, an order was entered staying the sale until June 4, 2012.

¶ 12    On December 15, 2014, plaintiff filed a motion for an order of possession and approval of the report of sale and distribution, claiming that a judicial sale of the property had been held on November 26, 2014. The report of sale and distribution indicates that plaintiff purchased the property.

¶ 13    On April 2, 2015, defendant filed a response to the motion to confirm the sale, claiming that on January 24, 2006, the date of the note and mortgage, MERS was not licensed to conduct mortgage business in Illinois, although he admitted that MILA, Inc., was licensed to do so. Defendant further claimed that on March 1, 2010, plaintiff "took an assignment of Note and Mortgage,"[1] but was not licensed to conduct mortgage business in Illinois. Defendant claimed that a mortgage made by an entity that lacked authorization under the Residential Mortgage License Act of 1987 (License Act) (205 ILCS 635/1-1 *et seq.* (West 2004))[2] was void as against public policy, and that "[a]ll orders in this case are void based on a void mortgage contract and subsequent void transfers."

_____

[1] We note that the assignment contained in the record on appeal indicates that the assignment was executed on April 30, 2008, not March 1, 2010. Defendant's response alleges that Merrill Lynch Mortgage Investors, Inc., at some point "took an interest in the Note," but Merrill Lynch is not a party on appeal and its alleged former interest is not at issue on appeal.

[2] Section 1-3(a) of the License Act requires that "[n]o person, partnership, association, corporation or other entity shall engage in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license from the Commissioner in accordance

- 3 -

¶ 14    In its reply to defendant's response, plaintiff claimed that defendant's attacks on the validity of the mortgage based on the License Act were forfeited due to defendant's failure to raise them at any time until after the judgment of foreclosure, foreclosure sale, and motion to confirm the sale. Plaintiff further argued that defendant was also estopped from raising such a defense, since he had filed bankruptcy multiple times and had admitted the validity of the mortgage in the bankruptcy proceedings by entering into postpetition plans to make payments on the mortgage. Plaintiff also argued that defendant's defense failed on the merits, as MERS was not required to be licensed under the License Act.

¶ 15    On April 22, 2015, the trial court entered an order confirming the judicial sale[3] and, on May 22, 2015, defendant filed a notice of appeal.

¶ 16                                  ANALYSIS

¶ 17    On appeal, defendant raises two issues. First, he argues that plaintiff lacked standing to file a complaint because MERS was not licensed to conduct mortgage business in Illinois at the time the mortgage was signed. Defendant also argues that plaintiff's complaint should be stricken because it contains a "blatant mischaracterization of fact" so egregious that allowing it to stand constitutes an "affront to the judicial process." We consider each argument in turn.

¶ 18    Defendant first argues that plaintiff "lacked standing to foreclose because the mortgagee was not licensed to conduct mortgage business in Illinois at the time the mortgage was signed." Plaintiff argues that this issue has been forfeited, since defendant raised it for the first time in his response to the motion to confirm the sale of the property and standing is an affirmative defense. Defendant, however, claims that he can raise the issue at any time because mortgages issued by unlicensed mortgagees are void as against public policy, relying on the Second District case of *First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567.[4]

¶ 19    We have no need to determine whether the issue was properly preserved because, even if it was, defendant's argument would still fail because it rests on a misapplication of the License Act. At the time of the issuance of defendant's mortgage, section 1-3 of the License Act provided, in relevant part:

    "No person, partnership, association, corporation or other entity shall engage in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license from the Commissioner in accordance with the licensing procedure provided in this Article I and such

_____

with the licensing procedure provided in this Article I and such regulations as may be promulgated by the Commissioner." 205 ILCS 635/1-3(a) (West 2004).

    [3]The order confirming the judicial sale does not appear in the record on appeal. The date of the order is taken from defendant's notice of appeal, and there is no dispute that such an order was entered on that date.

    [4]We note that the License Act has since been amended to state that "[a] mortgage loan brokered, funded, originated, serviced, or purchased by a party who is not licensed under this Section shall not be held to be invalid solely on the basis of a violation under this Section. The changes made to this Section by this amendatory Act of the 99th General Assembly are declarative of existing law." Pub. Act 99-113 (eff. July 23, 2015) (amending 205 ILCS 635/1-3(e)). However, we have no need to consider whether *Dina* is still good law with respect to mortgages issued prior to the amendment because, as we explain, even if it is, defendant's argument still fails on its merits.

regulations as may be promulgated by the Commissioner." 205 ILCS 635/1-3(a) (West 2004).

¶ 20    The License Act further defined several of the applicable terms. " 'Making a residential mortgage loan' or 'funding a mortgage loan' shall mean for compensation or gain, either directly or indirectly, advancing funds or making a commitment to advance funds to a loan applicant for a residential mortgage loan." 205 ILCS 635/1-4(b) (West 2004). " 'Loan brokering', 'brokering', or 'brokerage service' shall mean the act of helping to obtain from another entity, for a borrower, a loan secured by residential real estate situated in Illinois or assisting a borrower in obtaining a loan secured by residential real estate situated in Illinois in return for consideration to be paid by either the borrower or the lender including, but not limited to, contracting for the delivery of residential mortgage loans to a third party lender and soliciting, processing, placing, or negotiating residential mortgage loans." 205 ILCS 635/1-4(o) (West 2004). " 'Servicing' shall mean the collection or remittance for or the right or obligation to collect or remit for any lender, noteowner, noteholder, or for a licensee's own account, of payments, interests, principal, and trust items such as hazard insurance and taxes on a residential mortgage loan in accordance with the terms of the residential mortgage loan; and includes loan payment follow-up, delinquency loan follow-up, loan analysis and any notifications to the borrower that are necessary to enable the borrower to keep the loan current and in good standing." 205 ILCS 635/1-4(q) (West 2004). " 'Purchasing' shall mean the purchase of conventional or government-insured mortgage loans secured by residential real estate situated in Illinois from either the lender or from the secondary market." 205 ILCS 635/1-4(s) (West 2004). Finally, " '[o]riginating' shall mean the issuing of commitments for and funding of residential mortgage loans." 205 ILCS 635/1-4(u) (West 2004).

¶ 21    In the case at bar, the mortgage names defendant as the borrower and "MILA, Inc., DBA Mortgage Investment Lending Associates, Inc." as the lender. Similarly, the note lists MILA, Inc., as the lender whom defendant promises to pay. With respect to MERS, the mortgage states that " 'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." The mortgage further provides that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

¶ 22    Comparing the plain statutory language to MERS's role in the mortgage transaction reveals that MERS did not engage in any conduct that would require it to be licensed under the License Act. MERS did not "engage in the business of brokering, funding, originating, servicing or purchasing" (205 ILCS 635/1-3(a) (West 2004)) of defendant's mortgage such that it would be required to be licensed under the License Act. Instead, it was listed on the mortgage as the mortgagee, acting as the nominee for MILA, Inc., the lender. A "nominee" in this context is "[a] party who holds bare legal title for the benefit of others." Black's Law Dictionary 1076 (8th ed. 1999). "MERS is well known in the foreclosure setting as a membership organization that typically records, trades, and forecloses loans on behalf of many lenders, acting for lender accounts rather than their own." *Deutsche Bank National*

*Trust v. Cichosz*, 2014 IL App (1st) 131387, ¶ 3 (citing *Mortgage Electronic Registration Systems, Inc. v. Estrella*, 390 F.3d 522, 524-25 (7th Cir. 2004)). The License Act does not impose any requirements for the "mortgagee" or a "nominee" to be licensed; by its plain terms, it applies only to those who "engage in the business of brokering, funding, originating, servicing or purchasing" (205 ILCS 635/1-3(a) (West 2004)) residential mortgage loans. Defendant admitted in his response to the motion to confirm sale that the party that was engaged in such conduct with respect to defendant's mortgage, namely, MILA, Inc., was licensed at the time of the execution of the mortgage. Accordingly, even if defendant's argument was properly before this court and was not forfeited, it would still not provide a basis for reversing the trial court's judgment, as it fails on its merits.

¶ 23    We are similarly unpersuaded by defendant's second argument on appeal. Defendant argues that plaintiff mischaracterized facts to the trial court amounting to "an affront to justice." Defendant acknowledges that he did not raise this issue below, but argues that we should nevertheless review his contentions under the plain-error doctrine.

¶ 24    There is case law permitting a reviewing court to consider a forfeiture under the plain-error doctrine in civil cases. *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 855-56 (2010) (citing *Palanti v. Dillon Enterprises, Ltd.*, 303 Ill. App. 3d 58, 66 (1999), citing *Belfield v. Coop*, 8 Ill. 2d 293, 313 (1956)); *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 8 (2007); *In re Marriage of Saheb*, 377 Ill. App. 3d 615, 627 (2007). Although the doctrine may be applied in civil cases, it finds much greater application in criminal cases. *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 37; *Wilbourn*, 398 Ill. App. 3d at 856 (citing *Gillespie v. Chrysler Motors Corp.*, 135 Ill. 2d 363, 375 (1990)).

¶ 25    The cases that have applied it have held that the plain-error doctrine may be applied in civil cases only where the act complained of was a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process itself. *Arient*, 2015 IL App (1st) 133969, ¶ 37; *Wilbourn*, 398 Ill. App. 3d at 856; *Matthews*, 375 Ill. App. 3d at 8; *Saheb*, 377 Ill. App. 3d at 627. This court has observed that the application of the plain-error doctrine to civil cases should be "exceedingly rare." *Arient*, 2015 IL App (1st) 133969, ¶ 37; *Wilbourn*, 398 Ill. App. 3d at 856 (citing *Palanti*, 303 Ill. App. 3d at 66).

¶ 26    The question, then, is whether the case before us is the "exceedingly rare" civil case that requires application of the plain-error doctrine. *Arient*, 2015 IL App (1st) 133969, ¶ 37. We agree with plaintiff that it is not.

¶ 27    Defendant argues that there were several "blatant mischaracterization[s] of facts" by plaintiff, which requires application of the plain-error doctrine to the instant case. See *Gillespie*, 135 Ill. 2d at 377 (noting that cases in which the plain-error doctrine had applied "involved blatant mischaracterizations of fact, character assassination, or base appeals to emotion and prejudice"). First, defendant claims that plaintiff filed its complaint without providing any proof that it was entitled to initiate the claim against defendant and, "[i]n order to fool the trial Court and the Defendant," plaintiff attached an unsigned affidavit "to prove it was the proper Plaintiff." Defendant then claims that "[b]y the time [plaintiff] presented its Motion for Summary Judgment it miraculously found the assignment to prove its standing," which was "conveniently dated the day before the Complaint was filed." Defendant claims that "[n]o explanation was made for why the assignment went missing for one day, the day after it was allegedly executed. No explanation was made for why it arrived months later, at a

time it best served the Plaintiff." Finally, defendant claims that "[n]o explanation was given for why [the assignment] was recorded several months after the date it purports to have been executed. And no explanation was given for why there were no dates on the signature page and notary seal of the purported assignment. No explanation was given, because there is no reasonable explanation." None of the "facts" defendant points to appear to be mischaracterizations of fact, must less "blatant" ones such that the plain-error doctrine should apply.

¶ 28    First, as to the complaint, it is true that plaintiff attached a "lost document affidavit," which was unsigned and unsworn, meaning that it was not an affidavit at all. See *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002) ("an affidavit must be sworn to, and statements in a writing not sworn to before an authorized person cannot be considered affidavits"). However, there is no evidence whatsoever to suggest that this was done "[i]n order to fool the trial Court and the Defendant." Plaintiff did ultimately attach a copy of the note to its motion for summary judgment. Furthermore, in his answer, defendant admitted that plaintiff brought the suit in its capacity as "the trustee for the holder of the Mortgage given as security," thus admitting that plaintiff was entitled to file the lawsuit. See *Deutsche Bank National Trust Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 34 ("An action to foreclose upon a mortgage may be filed by a mortgagee or by an agent or successor of a mortgagee.").

¶ 29    Next, defendant's arguments as to the assignment mischaracterize the record on appeal. Defendant claims that plaintiff "miraculously found the assignment to prove its standing," but that "[n]o explanation was made for why the assignment went missing for one day, the day after it was allegedly executed." These statements imply that the assignment was missing. However, the "lost document affidavit" stated only that the *note* was missing—it said nothing about the assignment. Plaintiff was not required to attach the assignment to the complaint. See *Iordanov*, 2016 IL App (1st) 152656, ¶ 37 ("Although plaintiff did not attach a copy of the assignment to its pleadings, it is of no consequence as the [Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1501 *et seq.* (West 2008))] does not expressly require an assignment be attached to the complaint."). Thus, the fact that plaintiff attached the assignment to the motion for summary judgment but not to the complaint lends no support to defendant's argument.

¶ 30    Finally, defendant's challenges to the dates of the assignment are irrelevant and unpersuasive. First, defendant's statement that "no explanation was given for why there were no dates on the signature page and notary seal of the purported assignment" is misleading, as it implies that there was information missing from the assignment or that the signature page was from a different document. However, the assignment itself is fully completed. The date of the assignment appears on the first page of the assignment, and the notary seal indicates that the individuals who executed the assignment "personally appeared before me this day," referencing back to the date from the first page. Thus, the date of the assignment is clearly set forth and there is no evidence whatsoever to suggest that the signature page was not attached to the proper document. Additionally, with respect to defendant's comments that the assignment was "conveniently dated the day before the Complaint was filed," again implying some sort of wrongdoing, defendant presents no evidence to show that the assignment was *not* actually executed prior to the filing of the complaint. See *Iordanov*, 2016 IL App (1st) 152656, ¶ 41 (in order to demonstrate that the plaintiff lacked standing, the defendant

"needed to present evidence that the assignment *did not* occur before the complaint was filed" (emphasis added)). Whether the assignment was executed one day or one year before the filing of the complaint is irrelevant—the important fact is that it was, in fact, executed prior to the filing of the complaint. Defendant's speculation concerning the reasons for the nine-week delay between the execution and recording of the assignment is similarly irrelevant. The assignment occurs when there is a transfer of an identifiable interest from the assignor to the assignee (*Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 616 (1988)), while the recording serves to establish a lien and give third parties the opportunity to determine the status of the property's title (*Federal National Mortgage Ass'n v. Kuipers*, 314 Ill. App. 3d 631, 634 (2000)). Thus, the relevant date was the date of the assignment, not the date of the recording. Further, as a practical matter, the delay can be at least partially explained by the fact that the assignment was executed in Oregon but recorded in Illinois. Thus, there is nothing in defendant's claims that is a mischaracterization of fact at all, much less such a "blatant" one that would require the application of the plain-error doctrine to this case. Accordingly, there is no basis for vacating any of the trial court's orders, and we therefore affirm the trial court's judgment granting the motion to confirm the sale of defendant's home.

¶ 31                                    CONCLUSION

¶ 32        For the reasons set forth above, there is no basis to vacate any of the trial court's orders, and we therefore affirm the trial court's judgment granting plaintiff's motion to confirm the sale of defendant's home.

¶ 33        Affirmed.