2026 IL App (1st) 251636-U

FOURTH DIVISION
Order filed: June 25, 2026

No. 1-25-1636

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KECIA PORTER and KEYANA PORTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 7978 |
| | ) | |
| RONNIE THOMPSON, | ) | Honorable |
| | ) | Kerrie Maloney Laytin, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court's order denying the plaintiffs' motion to enforce the settlement agreement is affirmed because the record contains no indication of the basis for the court's ruling and is therefore insufficient to demonstrate that the court's order was erroneous.

¶ 2   Plaintiffs Kecia Porter and Keyana Porter, *pro se*, appeal a circuit court order denying their motion to enforce a settlement agreement that ended their personal injury action against defendant Ronnie Thompson. In the motion, the Porters alleged that Thompson had not tendered the settlement funds in a timely manner. Thompson responded that the Porters had refused to accept

checks listing Medicare and Medicaid as payees. For the following reasons, we affirm the court's denial of the Porters' motion.

¶ 3    In a complaint filed through counsel in August 2021, the Porters alleged that, in September 2019, their vehicle was rear-ended by a vehicle operated by Thompson, causing both of the Porters to sustain injuries. In August 2023, counsel for the Porters withdrew and the Porters then proceeded *pro se*. The circuit court conducted a pretrial conference with all parties on August 27, 2024, where it ruled on motions *in limine* and jury instructions. The record contains no transcript of this hearing.

¶ 4    The court scheduled a settlement conference with the parties for January 15, 2025. On January 15, 2025, following the settlement conference, the court dismissed the action with prejudice pursuant to settlement. The court "retain[ed] jurisdiction to enforce settlement."

¶ 5    On February 18, 2025, the Porters filed a "Motion to Compel Settlement Agreement Between the Parties" in which they alleged that they settled the case on January 15 and sent Thompson signed releases, but Thompson had not disbursed any settlement funds. Following a hearing, the court set a briefing schedule on February 21, 2025. There is no transcript of this hearing in the record.

¶ 6    Thompson responded that his insurer, State Farm, had issued checks with Medicare and Medicaid included as payees because they paid some of the Porters' medical expenses. Thompson further argued that the Porters had refused to accept the checks and would only accept checks issued to them alone. Thompson argued that State Farm was correct to insist on including Medicare and Medicaid as payees because state and federal law provided Medicare and Medicaid with a right to reimbursement. Attached to Thompson's response were medical records demonstrating that from 2019 to 2021, some of Kecia's care had been paid for by "Blue Cross Community

MMAI" and Medicaid and some of Keyana's care had been paid for by Medicare and Medicaid; Keyana's answers to interrogatories in which she stated that, from "November 2021 to present," she was insured by "State Medicaid and Medicare;" the releases signed by the Porters pursuant to the settlement agreement; and copies of email correspondence in which the Porters refused to accept checks with Medicare and Medicaid as payees and in which Keyana acknowledged during settlement negotiations that Medicare had paid for some of her treatment. In their reply, the Porters argued that Kecia did not, at that time or at the time of accident, have Medicare and argued that Thompson's insistence on making payment to Medicare and Medicaid violated the terms of their settlement agreements, which did not contain any reference to the programs. They also argued that they, rather than Thompson or State Farm, were responsible for resolving any liens held by Medicare and Medicaid.

¶ 7    On May 5, 2025, the Porters filed a "Motion Defendant Delay Settlement" in which they asked the court to find that Thompson had engaged in deceptive practices and caused unnecessary delays in the payment of the settlement funds. The court denied that motion, but set a hearing on the motion to enforce the settlement agreement for June 25, 2025.

¶ 8    Following that hearing, the court entered an order on June 25, 2025, stating, "[i]f [the Porters] receive a response to their May 13, 2025, request to Medicaid regarding liens prior to July 31, 2025, [the Porters] are to forward those response(s) to [Thompson's] counsel," "Medicare as to Kecia Porter is resolved as of June 25, 2025," and "Keyana is to send a written request to Medicare for a 'pay-off' letter" and bring the request and any response to the next hearing. The matter was continued for status on the Porters' motion on July 31. The record does not contain a transcript of the June 25 hearing.

¶ 9     On July 31, 2025, the court, having been "fully advised in the premises," denied the Porters' "Motion to Compel Settlement Agreement Between the Parties." The record does not include a transcript of this hearing. The Porters appealed.

¶ 10    The Porters argue that, in denying their motion to enforce the settlement agreement, the circuit court erred (1) by not enforcing section 2-2301(d) of the Code of Civil Procedure ("Code") (735 ILCS 5/2-2301(d) (West 2024)), which requires a settling defendant to "pay all sums due to the plaintiff within 30 days of tender by the plaintiff of the executed release and all applicable documents," (2) by allowing Thompson to search for new evidence of medical liens when no third party had filed a notice of lien, and (3) by effectively amending the settlement agreements to add Medicare and Medicaid as recipients of the settlement funds.

¶ 11    First, we note that the Porters did not raise the second argument in the circuit court and therefore, has forfeited it. See *Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, ¶ 24 ("It is well settled that a party that does not raise an issue in the trial court forfeits that issue and may not raise it for the first time on appeal.").

¶ 12    Thompson responds that the Porters cannot obtain relief under section 2-2301 because they did not provide "all applicable documents," namely, those addressing third-party rights of recovery, and because he was required to include Medicare and Medicaid as payees to protect their statutory recovery rights.

¶ 13    The limited record that we have shows that Medicare and/or Medicaid may have paid some bills for either plaintiff and may have an interest in the settlement funds. See 305 ILCS 5/11-22 (West 2018); *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 40. However, the record is

insufficient to evaluate the Porters' arguments and to determine whether the circuit court erred in denying their motion to enforce the settlement agreement.

¶ 14    The record shows that the court held at least one hearing on the Porters' motion on June 25, 2025, and scheduled another for July 31, 2025, but we have no transcript or bystander's report for either. While the court's June 25 order noted that the Porters had made some sort of inquiry with Medicaid regarding liens, that "Medicare as to Kecia Porter is resolved," and that Keyana was to send a request to Medicare for a pay-off letter, we have no other information regarding the existence or extent of their interest in the settlement funds. The record is devoid of information regarding the existence and/or amount of any liens or monies owed or payoff letters. Further, there is very little information in the record about the terms of the parties' settlement.

¶ 15    It is a well-established principle that "in order to support a claim of error on appeal the appellant has the burden to present a sufficiently complete record." *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Without a complete record on appeal, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392. "The presumption of correctness in the circuit court is especially strong when *** there is an indication that the court below was 'fully advised in the premises.'" *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 758 (2006).

¶ 16    In *Webster*, our supreme court applied these principles and affirmed an order granting a motion to enforce a settlement agreement when "the record contain[ed] no transcript of the hearing on defendant's motion to enforce settlement, no report of the proceedings, no bystander's report, and no agreed statements of facts." 195 Ill. 2d at 433. Instead, the record only reflected that the

court held a hearing on the motion, and there was no indication of what evidence or arguments were presented. *Id.* Further, there was no indication of the basis of the circuit court's decision. *Id.* Under those circumstances, the court "presume[d] that the trial court heard adequate evidence to support its decision and that its order" was in conformity with the law. *Id.* at 434.

¶ 17    We must reach the same result in this case. Without any written explanation of the court's decision or hearing transcripts or bystander's reports documenting the hearings on the Porters' motion, we must presume that the court's ruling was correct, and we have no basis on which to find that the court's denial of the motion was erroneous. This is particularly true when the court's order noted that it was "fully advised in the premises." See *Smolinski*, 363 Ill. App. 3d at 758.

¶ 18    In their brief, the Porters seem to argue that the court found that section 2-2301(d)'s 30-day deadline for the payment of settlement funds had not been implicated because they had not tendered "all applicable documents," including a "signed release of attorney lien, a signed release of a healthcare provider [lien] or a letter from the plaintiff's attorney pending final resolution of the lien amount." However, the record does not contain any support for that allegation, so we may not consider it. See *Palanti v. Dillon Enterprises, Ltd.*, 303 Ill. App. 3d 58, 66 (1999) ("Arguments made by an appellant which depend on facts which are not contained in the record are not sustainable on appeal."); *Thomas v. Powell*, 289 Ill. App. 3d 143, 147 (1997) (stating that the reviewing court "is limited to evidence in the record on appeal" and "cannot rely upon mere assertions by a party"). The Porters also rely on other facts not in the record, such as that they were "told in person that no liens existed" and there was "no mention of setting aside Medicare or" Medicaid monies in settlement negotiations.  They also allege that, in September 2025, two months after the trial court's order which is the subject of this appeal, they "sent a copy of the Medicare

confirmation that the princip[al], interest, and remaining balance is 0 to defense counsel along with a letter seeking the release of all settlement funds." We cannot consider any such facts outside the record. See *Palanti*, 303 Ill. App. 3d at 66; *Thomas*, 289 Ill. App. 3d at 147. The insufficiency of the record also leaves us unable to address the Porters' argument that the court erred by effectively amending the settlement agreement to add Medicare and Medicaid as payees.

¶ 19    For the foregoing reasons, we affirm the denial of the Porters' motion to enforce their settlement agreement with Thompson. However, upon the issuance of our mandate, jurisdiction to enforce the settlement will revest with the circuit court, which retained jurisdiction to enforce the settlement indefinitely.

¶ 20    Affirmed.